## OLLIE BAKER et al., Respondents, v. MODERN WOODMEN OF AMERICA, Appellant.

**St. Louis Court of Appeals. Argued and Submitted April 20, 1909. Opinion filed June 22, 1909.**

FRATERNAL BENEFIT ASSOCIATIONS: Policy Provision: Conviction of Insured: Appeal after Conviction: Death Pending Appeal: Case Stated. A certificate of membership issued by a fraternal benefit association provided that it should be void if insured should be convicted of a crime or felony. Insured was tried and convicted of murder in the second degree and his punishment assessed at ten years imprisonment in the penitentiary and sentence was pronounced against him accordingly. In due time an appeal was allowed him to the Supreme Court and he entered into a *supersedeas* bond. No formal order was made by the court staying the execution of the sentence, but defendant was released on bail. Pending the appeal, defendant died, but no suggestion of his death was made to the Supreme Court, and that court reversed the judgment and remanded the cause. *Held*, (1) That the granting of the appeal and the taking of the *supersedeas* bond suspended the enforcement of the judgment, and the cause passed out of the jurisdiction of the circuit court and was pending before the Supreme Court as if there instituted; (2) that the death of defendant abated, not merely the appeal, but the prosecution, so that it stood as if no prosecution had ever been commenced against him; (3) that the term "shall be convicted of a crime or felony," as used in the certificate of membership, means lawfully convicted; convicted by a final judgment that stands and disposes of the case against the defendant beyond all power of reversal, change or annullment by any authority.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Benj. D. Smith* and *Barbour & McDavid* for appellant.

(1)   If the insured, James Mote Baker, after he became a member of defendant order, was convicted of a felony, his benefit certificate was *ipso facto,* at the moment of conviction rendered null and void.   (2) The Missouri courts have many times determined that the contract between a member of a fraternal beneficiary society and the society itself will be substantially upheld and enforced.   Borgraefe v. Knights of Honor, 22 Mo. App. 142; Harvey v. Grand Lodge, 50 Mo. App. 479; Boyce v. Royal Circle, 99 Mo. App. 356; Lloyd v. Modern Woodmen, 113 Mo. App. 39; Leech v. Order Telegraphers, 130 Mo. App. 16; Whitmore v. Knights of Honor, 100 Mo. 47; McMahon v. Maccabees, 151 Mo. 537.   (3) And these provisions of the certificate and by-laws, which together constitute the contract in fraternal societies, are self-enforcing, and no action by the local or head camp or any of the officers thereof is necessary to make such forfeiture effective and complete.   Leech v. Order of R. R. Telegraphers, 130 Mo. App. 5; Lavin v. Grand Lodge, 104 Mo. App. 1; Boyce v. Royal Circle, 99 Mo. App. 349; Borgraefe v. Knights of Honor, 22 Mo. App. 127; Rood v. Railway Conductors Assn., 31 Fed. 62.   (4) The verdict of the jury, finding Baker guilty of murder in the second degree, and the sentence and judgment of the court thereon constituted in law the conviction of James Baker of a felony.   Ex parte Collins, 94 Mo. 1. c. 24; State v. Townley, 147 Mo. 205; 1 Bouvier's Law Dictionary, p. 400; 4 Am. and Eng. Ency. Law, p. 139, 140; People v. Adams, 95 Mich. 543; Egan v. Jones, 32 Pac. 929; Blaufus v. People, 69 N. Y. 108; Commonwealth v. Lockwood, 12 Am. Rep. 699; Amadon v. Smith (U. S.), 4 L. Ed. 460; People v. Black, 54 Pac. 385; People v. Ward, 66 Pac. 372; Quintard v. Knoedler, 55 Am. Rep. 149; State ex rel. v. Moise, 35 L. R. A. 711; 1 Bishop's Criminal Law, sec. 963.   (5) And the fact that an

appeal was taken by the defendant from such verdict and judgment does not annul the same, but the conviction stands in full force and vigor, excepting only that the execution of the sentence of the court is stayed by the giving of an appeal bond. Ritter v. Democratic Press Co., 68 Mo. 458; State v. Buck, 120 Mo. 496; Rodney v. Gibbs, 184 Mo. 12; State v. Alexander, 22 Am. Rep. 675; Hackett v. Freeman, 72 N. W. 528; Quintard v. Knoedler, 55 Am. Rep. 149; Commonwealth v. Lockwood, 109 Mass. 323; Vieberg v. State, 100 Am. St. Rep. 24; In Re Kirby, 73 N. W. 92. (6) The deceased, James Moat Baker, died while this judgment and sentence remained in full force and effect. The record in this case conclusively shows that his death occurred prior to the time when the case against Barnett who was jointly indicted with him, was considered on appeal, and Baker died with a judgment of conviction of murder in the second degree resting against him in the circuit court of Pemiscot county, Missouri. (7) The court committed error in admitting over appellant's objection, the record of the Supreme Court reversing the case of State v. Barnett; and the court also committed error in admitting, over the objections of appellant the record of the subsequent trial and acquittal of Barnett.

*Faris & Oliver* and *Ward & Collins* for respondents.

There being no final judgment there was no conviction. Stone v. Wicliffe, 106 Ky. 256; 24 Am. and Eng. Ency. Law (2 Ed.), p. 6949; Smith v. Vernon Co., 188 Mo. 508; Wilmouth v. Hensley, 121 Pa. St. 209; State v. McIntyre, 1 Jones L. (46 N. Car.) 1; State v. Mooney, 74 N. C. 98; Smith v. State, 6 Lea (Tenn.) 637; Fonse v. People, 51 Ill. 311; Schuffer v. Pruden, 64 N. Y. 52; Pitts v. Pitts, 52 N. Y. 593; R. S. 1899, sec. 3237; Buck v. People, 26 Ill. App. 269; State v. Barnes, 24 Fla. 153; White v. Com., 79 Va. 616; R. S.

1899, sec. 4680; Com. v. Garnon, 99 Mass. 422; Gallagher v. State, 10 Tex. App. 472; Fonse v. The People, 51 Ill. 311; King v. Turner, 15 Est. 570; Blauffus v. People, 69 N. Y. 109; State v. Townley, 147 Mo. 205.

STATEMENT.—Defendant, a fraternal beneficiary society, organized under the laws of the State of Illinois, a corporation authorized to furnish life indemnity or pecuniary benefits to the widows, heirs and devisees of deceased members, or accident or permanent disability indemnity to members thereof, and authorized to do business in this State under the laws of the State relating to such societies, issued to one James Moat Baker a benefit certificate whereby it agreed to pay the sum of $2,000 upon his death to his beneficiaries, who in this case are his widow and minor son, plaintiffs herein, the latter suing by guardian and curator. It is stated in the certificate of membership that this sum is payable upon the death of James Moat Baker, who was a member of Cottonwood Camp of the Order, only upon all the conditions contained in the application, certificate and the by-laws of the society, as existing when the certificate issued or as they may be thereafter modified, amended or enacted, being fully complied with. The application for membership is made a part of the certificate and the literal truth of all statements in it are warranted, it being provided that if the application is not literally true, the benefit certificate shall be null and void; that it is issued in consideration of the warranties of agreements in the application and in consideration of the payment of assessments, and it is provided by the 5th paragraph of the certificate that if the member holding this certificate "shall be expelled from this society, or become intemperate in the use of alcoholic drinks, . . . or if he shall be convicted of a crime or felony, the punishment for which may be imprisonment in the penitentiary, after being adopted into this society, . . . then this certificate shall be null and void and of no

effect, and all moneys which have been paid and all rights and benefits which may have accrued on account of this certificate, shall be absolutely forfeited and this certificate become null and void."

It is further provided in the 8th paragraph of the certificate, that it shall be subject to forfeiture for any causes of forfeiture now or hereafter prescribed by the society by its by-laws.

The plaintiff, Ollie Baker, described as wife of James Moat Baker, is designated as the person to receive $1,000 of the $2,000, and Harrison Baker, the son, is designated as the person to receive $1,000. It is not considered necessary to set out other provisions of the application or of the certificate nor of the by-laws of the defendant, any further than to state that by section 12 of the by-laws, it is specifically provided, among other things, that should any person, a member of the society, thereafter be convicted of a felony after being adopted in this society, "the punishment for which shall be imprisonment in a penitentiary, State prison, State reformatory, house of correction, or other State or federal penal institution, he shall, *ipso facto,* forfeit all payments made by him and all rights as a member of this society, either social or beneficial, and his certificate shall thereby become absolutely null and void, without any action on the part of his local camp, the head camp, or of this society, or of any of the officers thereof; and the payment by him of any dues or assessments, thereafter made or the acceptance thereof by the officers of his local camp, or of the head camp, or of this society, shall not have the effect of waiving such forfeiture or reinstating such certificate holder to any rights, benefits, or privileges as a member of this society."

Section 35 of the by-laws provides that no officer nor any local camp officer is authorized or permitted to waive any provision of the by-laws "which relate to the contract for the payment of benefits between

the members and the society;" and section 248 provides that no local camp nor any of the officers thereof shall have the right or power to waive any of the provisions of the by-laws of the society.

Section 275 provides that the clerk of the local camp is the agent of the camp and not the agent of the head camp and that no act or omission on his part shall have the effect of creating a liability on the part of the society or waive any right or immunity belonging to it.

Section 278 forbids the camp clerk to knowingly receive assessments or dues from any person "who after his adoption into this society shall have been convicted of a crime or felony; punishment for which may be imprisonment in the penitentiary, provided, however, that the receipt, retention or transmission to the head camp of such dues or assessments shall not have the effect of waiving the forfeiture of the certificate of such member, or secure to him any rights whatever."

Section 335 reads: "If any person, after becoming a member of this society, shall be convicted of a crime or felony, the punishment for which may be imprisonment in the penitentiary, he shall by such conviction be expelled from the society without any action being taken by the Local Camp, Executive Council, Head Camp, or any of the officers of the society."

The certificate, application and by-laws are all properly pleaded and are all in evidence. It was in evidence in the case that on March 4, 1906, James Moat Baker and one Billy Barnett were jointly tried in the circuit court of Pemiscot county, this State, a verdict of guilty of murder in the second degree found against both of them, and their punishment fixed at imprisonment in the penitentiary for a term of ten years. On the 10th of March and during the same term of that court, sentence was pronounced against these two defendants in accordance with the verdict of the jury. At the same term and in due time, James Moat Baker

filed his affidavit praying an appeal to the Supreme Court which appeal was granted and thereupon Baker entered into bond. The bond recites that, "Whereas, the said defendant, James Baker stands convicted in this court of the crime of murder in the second degree and has been sentenced, under the order and judgment of this court, to imprisonment in the State penitentiary for a term of ten years; from which judgment and sentence the said James Baker, has been granted an appeal to the Supreme Court of the State of Missouri;" that if he shall appear in the Supreme Court at the October, 1906, term thereof, to receive judgment in the appeal, and in the circuit court of Pemiscot county, if the Supreme Court shall so order, and at such time and place as the court shall direct, "and render himself in execution and obey. every order and judgment which shall be made in the premises," then this bond to be void, otherwise to be in full force. The bond was approved by the circuit court, whereupon Baker was released from custody.

There is evidence in the case tending to show that the officers and members of the local camp of defendant at Cottonwood Point knew of the fact that Baker had been convicted of murder in the second degree and sentenced to a term of ten years in the penitentiary and had appealed. There is also evidence in the case tending to prove that after the taking of the appeal and while the same was pending in the Supreme Court some question arose as to the rights of Baker as a member of defendant order and as to whether he should pay dues and assessments pending his appeal; that a committee or certain members of the camp, informally decided that he should pay his dues and assessments as any other member pending his appeal. It is undisputed that Baker thereupon continued to pay all dues and assessments up to the day of his death, the local lodge or camp and the clerk thereof taking and accepting these dues and assessments from him precisely as from

140 App.—40

any other member. While reports of his payments of dues and assessments were made by the local clerk of the camp to the head clerk of the head camp in the usual and ordinary way, no mention appears to have been made, so far as the evidence shows, of the fact of his conviction in any communication from the local camp to the head camp. Baker died of pneumonia on the 21st day of March, 1907, his case pending on appeal in the Supreme Court, and he never having been imprisoned in the penitentiary. On the 14th day of May, 1907, no suggestion of the death of Baker having been made before the Supreme Court, that tribunal reversed and remanded the case both as to Baker and as to Barnett. The mandate of the Supreme Court is in evidence and is in the usual form, reciting that the parties appeared by their respective attorneys before the Supreme Court, and that court being sufficiently advised, "doth consider and adjudge that the judgment aforesaid in form aforesaid, by the said Pemiscot County Circuit Court rendered, be reversed, annulled and for naught held and esteemed, and that the said appellants be restored to all things which they have lost by reason of said judgment. It is further considered and adjudged by the court that the said cause be remanded to the said Pemiscot County Circuit Court for further proceedings to be had therein in conformity with the opinion of this court herein delivered, and that the said appellants recover against the said respondent their costs and charges herein expended."

It is in evidence in the case that upon the return of the mandate to the circuit court, the death of Baker was there suggested and the cause abated as to him; Barnett, his co-defendant, being placed on trial upon the same indictment, was acquitted.

The case at bar was tried before the court, a jury having been waived. No instructions appear in the abstract of the record before us as having been asked or given upon the part of the plaintiffs. Four dec-

larations of law were given at the instance of defendant and four refused, exception being duly saved by the defendant to the refusal of these four.

One of the instructions or declarations of law given by the court at the instance of defendant, declares that under the evidence in the case it is not shown that the defendant had any knowledge or notice of the trial or conviction of James Baker for a felony, if he was so tried and convicted, and it is therefore not estopped to assert such conviction, if had, as ground of forfeiture of the policy.

Instruction No. 6, given at the instance of defendant, after setting out the provisions of the application, the certificate and by-laws, declared that if the court should find from the evidence that Baker was, while a member of defendant society, convicted of a felony, then the judgment must be for the defendant.

Instruction No. 7, given at the instance of defendant, declared the law to be that the clerk of local camp at Cottonwood Point, Missouri, had no right under the by-laws of the defendant society, to accept any dues or assessments from Baker after he was convicted of a felony, and if the court should find from the evidence that he was so convicted, the acceptance of any such dues or assessments by such local clerk would not bind the defendant nor estop it from asserting a forfeiture of the policy by reason of such conviction, if the court finds there was a conviction, and this the court declared would be true even though the clerk knew when he received the dues of the fact of the conviction, unless the court further found that such knowledge or information of the conviction was made to the defendant society or to one of its principal officers at the time such dues or assessments were paid to the local clerk.

The eighth declaration of law held that no officer or member of a local camp has power to alter, change or waive any of the by-laws of defendant relating to

the contract, and that knowledge of the fact of conviction, if there had been a conviction, of the felony, would not be imputed to the head officers of the society so as to bind the defendant, unless the court further finds from the evidence that the head officers knew or had been informed of the conviction.

The first of the refused declarations of law asked by defendant, announced that under the laws of Missouri, murder in the second degree is a felony, punishable by imprisonment in the penitentiary, and that where a person is tried by a jury and found guilty of murder in the second degree and the sentence and judgment of the court is pronounced thereon, such person, in law, stands convicted of a felony, as used in the by-laws of the defendant and in the certificate sued on, and this is true whether or not a supersedeas bond is given and an appeal taken.

The second refused declaration of law asked by the defendant was to the effect that if the court found from the evidence that Baker, while a member of the defendant order, was tried by a jury in the circuit court on a charge of murder in the second degree and found guilty, and the judgment and sentence of the court was pronounced on the verdict against Baker, then as a result of such trial Baker "stood convicted of a felony, which judgment *ipso facto* forfeited all rights which Baker had in the benefit certificate sued on, and the verdict in the case must be for defendant."

The fourth refused declaration asked by defendant, was to the effect that the certificate and by-laws provided that conviction of a felony *ipso facto* forfeited all rights of membership, and that if the court found from the evidence that Baker while a member of the defendant society was convicted of a felony, the conviction would *ipso facto* forfeit all rights as a member of the society or forfeit such certificate and it would thereby become null and void.

The fifth refused declaration of law asked by de-

fendant, was to the effect that if Baker while a member of the order was tried on the charge of murder, found guilty, his punishment assessed at ten years in the penitentiary and a sentence pronounced thereon by the court, then the court declares the law to be "that such trial, verdict and judgment, would in law be the convicting of the said James Moat Baker of a felony, as defined in the by-laws of the defendant, and his benefit certificate would thereby become, *ipso facto,* forfeited and the judgment in this case must be for the defendant."

From a verdict in favor of plaintiffs, defendant appeals.

REYNOLDS, P. J. (after stating the facts).— From the instructions given by the court, it will be noted that in the first place the court held, in effect, that the reception of dues and assessments from Baker by the local camp, the fact of his alleged conviction not being communicated to the superior authorities of the Order, was no estoppel against the Order setting up forfeiture. As plaintiffs have not appealed from this declaration of law, although their counsel, as well as counsel for defendant, have argued this proposition with great earnestness and with much learning, it is not before us, and in the view we take of the case, it is not necessary for us to consider it. We express no opinion whatever, therefore, on the effect of the action of the local camp in accepting the dues, remarking however, that it appears by the uncontroverted evidence in the case, that the dues of James Baker and all assessments levied on him during his lifetime were paid in due time and to the proper officer, so that, provided the result of the trial under the charge of a felony was not a conviction within the meaning of the certificate and the by-laws of the defendant, Baker was in no way in default and was in good standing in the Order down to the day of his death. The point here in decision, therefore, is whether, within the meaning

of the by-laws of the organization and of the certificate of membership and of the law, James Baker was convicted of a felony. If so, his membership was forfeited, assuming for this case only, but not deciding, that the local camp had no power to waive forfeiture and did not do so by acceptance of dues and assessments. We have been cited to a number of cases on this question of the effect of the verdict and sentence, but on careful consideration of them, hold that they do not meet this case. The matter presents itself to us in a very simple light. That Baker was tried for a felony, a verdict returned against him and sentence of imprisonment imposed by the circuit court is beyond question. It is also beyond dispute that he appealed from that to the Supreme Court. Section 2696, Revised Statutes 1899, provides for the allowance of an appeal in all cases of final judgment rendered upon an indictment. Section 2698, provides that no such appeal or writ of error shall stay or delay the execution of the judgment or sentence, except in capital cases, unless the court in which the judgment is rendered shall be of opinion that there is probable cause for such appeal or writ of error or so much doubt as to render it expedient to take the judgment of the Supreme Court thereon and shall make an order expressly directing that such appeal or writ of error shall operate as a stay of proceedings on the judgment. While we do not find in the record in the case any order of the court, on granting the appeal, suspending the execution of the judgment, and while our own experience shows us that in practice such order is rarely entered, it commonly being assumed that the granting of the appeal and approval of the bond or taking recognizance, meets that requirement of the law, and as it is very evident that an appeal was granted and supersedeas bond approved, and that Baker was let to bail, the effect was to suspend enforcement of sentence and judgment. When the appeal was perfected and a supersedeas bond

tendered and approved, the cause passed out of the jurisdiction of the circuit court and was pending, as on a trial at law, before the Supreme Court, as completely as if there instituted. Pending action on the case by the Supreme Court, Baker died. His death abated the case, not simply the appeal, but abated the prosecution, so that it stood, as far as he was concerned, as if no prosecution had ever been entered against him. [State v. Woods, 56 Mo. App. 55; Town of Carrollton v. Rhomberg, 78 Mo. 547.] In this latter case, at page 549, Mr. Commissioner Martin says: "It is unnecessary to consider whether this is a criminal or a civil proceeding, for under neither view of it could the case be proceeded with. If it is a criminal proceeding it abates as a matter of course," citing State v. Perrine, 56 Mo. 602. In this latter case, the Supreme Court, speaking through Judge WAGNER, referring to the case under consideration and to the fact that the defendant had been convicted and appealed to the Supreme Court, says: "Pending the appeal he died, and the case has been revived in the name of his administrator, who is now made a party to the record. We know of no law continuing a prosecution against a dead man. The statute provides, that when an appeal or writ of error shall be prosecuted from the judgment, in a case of misdemeanor, the recognizance shall be conditioned, that the defendant shall appear in the court in which the judgment was rendered, at such time and place as the Supreme Court shall direct, and that he will render himself in execution, and obey every order and judgment which shall be made in the premises. When the party is dead, it is impossible for him to comply with the stipulations of the bond, or obey the mandate of the court. The case was thereby necessarily abated, and it must be dismissed." It is true that these cases arose in prosecutions for misdemeanor and in one case against a surety on a bond, but the

proposition that death abated the cause is clearly announced in each of them, and we know of no difference in application of the principles between felonies and misdemeanors. The conditions of the bond or recognizance are practically identical in each class. It is not the appeal which abates, but the prosecution itself, the right of action itself, the liability to prosecution for the alleged crime. Abating as it does on the death of the defendant, does not simply mean a discontinuance; it means an extinguishment of the very right of action itself. The right of prosecution is as effectually wiped out as if it had never existed.

In State v. Brown, 1 Mo. App. 449, this court, l. c. 450, treating of the effect of the death of one of the parties to the cause, pending an appeal, says: "When either ceases to exist and is incapable of being represented by any successor, the 'case' is at an end."

The very term "abatement" carries this meaning. "Abatement," says Am. and Eng. Ency., vol. 1, p. 41 (2 Ed.), "is a generic term derived from the French *abattre*, and signifies the quashing, beating down, removing or destroying of a thing."

Applying the principle in this case and without regard to the fact that the Supreme Court reversed and remanded the case against Baker, he then being dead, we hold that the fact of his death having been established pending the appeal in the Supreme Court, he was not a "convict." The case against him ended, ended as completely and effectually as if never instituted. Construing the language in the certificate of membership and in the by-laws of the defendant organization, we hold that the term, "shall be convicted of a crime or felony," as there used, means lawfully convicted, convicted by a final judgment that stands and disposes of the case against the defendant beyond all power of reversal or change or annullment by any authority. The death of this man, then having the lawfulness of the conviction of the lower court before the

Supreme Court, that very question of the lawfulness of his conviction being open and undetermined, freed him from further prosecution and removed from him the judgment of the lower court. The defendant had no right, under its issued certificate or its by-laws to claim a forfeiture, save under a lawful, a final and enforceable conviction. Until the Supreme Court passed on the lawfulness of the verdict and sentence there was no enforceable conviction, Baker could not be committed to prison, the giving and approval of the bond effectually preventing imprisonment in the penitentiary or elsewhere.

Defendant here claims a forfeiture. Forfeitures are not favored by the courts; they will not be enforced on narrow and doubtful constructions, and no court will, unless controlled by the contract the parties have themselves made, enforce them; least of all will it allow one of the parties to a contract, in the absence of an express covenant in the contract itself to that effect, to construe a forfeiture into a contract and declare and enforce it. Organizations of like class of this defendant have been very kindly dealt with by our laws; very liberal provisions are made for them. Very many of our plain everyday people look to them for protection. These organizations should be very slow in insisting on rigid interpretations of their certificates and by-laws—more rigid than any so-called old-line companies are permitted to exact, in resisting and defeating the claims of those by whose small contributions the organization is kept alive. In this case counsel for appellant remind us that its organization is founded on social features—that it is to bring neighbors together in social relations and that it is odious that the society of a convict should be forced upon his neighbors. That is an unfortunate argument for defendant. The evidence in the case shows that this unfortunate man's own neighbors received him and kept him in fellowship after the court and jury had found

against him. These were the neighbors and friends he associated with and they do not seem to have shut the door on him in the days of his troubles.

The judgment of the circuit court is for the right party and is affirmed. *Nortoni, J.,* concurs; *Goode, J.,* not sitting.

