16314

McLAUGHLIN v. BROTHERHOOD OF RAILROAD TRAINMEN
(57 S. E. (2d) 411)

234

Mr. *William H. Blackwell,* of Florence, *for Appellant,*

*Messrs. Willcox, Hardee, Houck & Palmer* and *Mc-Eachin, Townsend & Zeigler,* all of Florence, *for Respondent,*

February 1, 1950.

OXNER, Justice.

This is an action to recover damages for alleged unlawful cancellation of an insurance certificate or policy issued to the plaintiff, B. W. McLaughlin, by the defendant, Brotherhood of Railroad Trainmen, which has an insurance department incorporated under the laws of Ohio. The Court below held that the undisputed facts showed a wrongful cancellation and submitted to the jury only the question of damages. From the judgment entered on the verdict of the jury, the defendant has appealed. We shall refer to the parties as they appeared in the Court below.

The principal questions for determination are (1) whether the Court erred in refusing defendant's motion for a directed verdict, and (2) the measure of damages in the event the plaintiff is entitled to recover.

Plaintiff commenced working for the Atlantic Coast Line Railway Company in 1920. He became a member of the Broterhood of Railroad Trainmen in 1922. Under the constitution of this organization, any member in good standing may, if he so desires, apply to the insurance department for a certificate of insurance for which he is required to pay a monthly assessment. On plaintiff's application, a benefit certificate was issued to him in 1922 which remained in force until 1932, at which time it was exchanged for another certificate. The latter certificate remained in force until November 1, 1936, when it was surrendered and the

certificate involved in this controversy issued. The first two certificates mentioned were surrendered because the assessments were insufficient to pay for the cost of the protection afforded. They are not involved on this appeal.

Under the terms of the certificate issued on November 1, 1936, the defendant agreed, in consideration of a monthly assessment of $12.51, to pay to the plaintiff on November 1, 1956, the sum of $3,000.00, or if he died prior to that date, to pay said amount to his wife who was named beneficiary. In addition to the protection above mentioned, it was further provided that the amount therein stated should be paid to the insured in the event he became totally and permanently disabled through the loss of certain designated members of the body.

Section 6 of the special provisions and conditions of the certificate is as follows: "Membership in the Individual Reserve Department shall continue only during the time that the member remains in good standing in the Brotherhood of Railroad Trainmen. Should a member be expelled from this department or should he take a final withdrawal card or be expelled from the Brotherhood of Railroal Trainmen, his equity, if any, in any and all Certificates of insurance and annuities carried in this department as of the date his membership ceases shall be determined and paid to him in cash, if living; if not, to his legal representatives, whereupon all interests and rights under any Certificates issued to him shall cease and such Certificates shall become null and void."

The constitution and general rules of the Brotherhood then in effect or those thereafter adopted were made a part of the above certificate. In this constitution there was a provision almost identical with that of Section 6 above quoted.

On July 15, 1946, plaintiff was expelled from the local lodge upon the ground that on May 18, 1946, he, as a flagman, accepted a call when the Brotherhood "was out on a legal strike." Plaintiff denied this charge and contended that the strike had been called off prior to his acceptance of the

call. Thereafter during the latter part of July plaintiff tendered the assessment for August but the defendant refused to accept it. On August 14, 1946, the General Secretary and Treasurer of the Brotherhood wrote plaintiff as follows: "Consistent with the termination of your membership, effective July 15th, 1946; we enclose check in your favor for $1,004.64, representing the Cash Surrender Value of your $3,000, Plan 5, Certificate No. 26926."

On August 19th, plaintiff replied:

"I am in receipt of your letter of 14th instant enclosing check for cash surrender value of above mentioned policy.

"I have no intention of surrendering this policy for its cash surrender value. If you care to return the premiums I have paid I will consider the propriety of accepting that amount in settlement.

"I have tendered the premiums as they have become due and take the position that I am entitled to keep the policy if I care to do so. I have not been guilty of any act which warrants my being dismissed from the Brotherhood of Railroad Trainmen, and the time has not expired within which I may appeal from the action taken by the Local Lodge. Kindly let me know if you intend to offer a return of all amounts paid, and then I will let you know whether or not I will accept it or insist upon my legal rights.

On August 22nd, the General Secretary and Treasurer wrote plaintiff that since his membership in the Brotherhood had terminated as of July 15th, the insurance department was required to determine and pay to him his equity in the certificate. It was further stated in this letter that in the event plaintiff appealed and his appeal was sustained, the certificate would be reinstated upon plaintiff's returning the cash value of the policy. Thereafter, in accordance with the rules of the Brotherhood, plaintiff appealed to the President, A. F. Whitney, who on October 16, 1946, sustained the appeal and set aside the expulsion made by the local lodge. On October 25th, the plaintiff wrote to the General Secre-

tary and Treasurer, calling attention to the fact that the President had ruled that his expulsion was unlawful and demanding a return of all premiums paid. The General Secretary and Treasurer replied on October 30th, stating that upon plaintiff's returning the check for the cash surrender value and paying all accrued dues, the policy would be continued in force. On November 4th, plaintiff again demanded a return of all premiums paid. About this time Mr. Whitney wired the plaintiff to disregard his letter sustaining the appeal, stating that the action of the local lodge in expelling the plaintiff was affirmed. Plaintiff thereafter appealed to the Board of Directors of the Brotherhood, which under the rules is the final appellate tribunal. That body on May 12, 1947, held that the local lodge erred in expelling plaintiff.

On June 4, 1947, plaintiff wrote the Secretary and Treasurer a letter in which he returned the check for the cash surrender value of the policy and again demanded the return of all premiums paid. On June 10th, the General Secretary and Treasurer replied, stating that the plaintiff was entitled to have his insurance continued in force upon the payment of the accrued premiums but that he was not entitled to the return of the premiums.

We agree with the Court below that there was a wrongful cancellation of plaintiff's policy. The provision in the certificate and constitution to the effect that when a member is expelled from the Brotherhood, his certificate becomes null and void and he is only entitled to receive the cash surrender value thereof, contemplates a lawful expulsion. It is true that plaintiff was expelled by the local lodge but it was finally determined that there was no foundation for the charge upon which he was expelled. When his appeal was sustained by the Board of Directors, his standing was the same as if he had never been expelled. *Vivar v. Supreme Lodge of Knights of Pythias,* 52 N. J. L. 455, 20 A. 36; *Connelly v. Masonic Mutual Benefit Association,* 58 Conn. 552, 20 A. 671, 9 L. R. A. 428, 18 Am. St.

Rep. 296; *Marck v. Supreme Lodge Knights of Honor,* C. C., 29 F. 896.

In *Baker v. Modern Woodmen of America,* 140 Mo. App. 619, 121 S. W. 794, 798, the certificate of insurance and by-laws of the defendant provided that the certificate should be void and all payments made thereon forfeited if the insured was "convicted" of a felony. Subsequent to the issuance of the certificate the insured was found guilty of murder in the second degree, a felony, and a term of imprisonment in the penitentiary imposed. The insured appealed to the Supreme Court from the judgment of conviction and was granted bail during the pendency of said appeal. While it was pending, he died. The beneficiaries named in the certificate brought suit to recover the amount of the certificate. The defendant denied liability on the ground that all rights under the policy had been forfeited by the conviction of the insured. In upholding the right of the benficiaries to recover, the Court said: "Construing the language in the certificate of membership and in the by-laws of the defendant organization, we hold that the term, 'shall be convicted of a crime or felony,' as there used, means lawfully convicted, convicted by a final judgment that stands and disposes of the case against the defendant beyond all power of reversal or change or annulment by any authority." To the same effect is the case of *Woodmen of the World v. Dodd et al.,* Tex. Civ. App., 134 S. W. 254.

Defendant further relies on the following provision in the policy: "Membership in the Individual Reserve Department shall continue only during the time that the member remains in good standing in the Brotherhood of Railroad Trainmen." It is argued that when plaintiff was expelled from the local lodge, he ceased to be in good standing. But when this action was reversed by the highest appellate tribunal within the Brotherhood, it was then determined that the local lodge was not justified in depriving plaintiff of his good standing. As pointed out in *Supreme Lodge Knights of Pythias v. Wellenvoss,* 6 Cir., 119 F. 671, 677:

"It certainly can be no defense to an action on the certificate that the society wrongfully deprived the member of 'good standing.' If that be so, the unwarranted action of the society might be made to protect it from just liability. This would be to permit it to take advantage of its own wrong."

In November, 1946, the constitution of the Brotherhood was amended so as to permit a member who had been expelled to continue his insurance if he so desired. Of course, this amendment was not in effect when plaintiff was expelled in July, 1946. At that time there was no provision either in the policy or constitution governing the rights of the parties pending an appeal from an order of expulsion. Under these circumstances the Brotherhood acted at its peril when, during the pendency of the plaintiff's appeal, it refused to accept the premiums tendered, declined to recognize plaintiff as a member, and undertook to cancel the contract by forwarding a check for the cash surrender value of the policy.

In *Shuler v. Equitable Life Assurance Society of the United States,* 184 S. C. 485, 193 S. E. 46, 48, the Court said: "By the weight of authority, where an insurer wrongfully cancels, repudiates, or terminates the contract of insurance, the insured may at once pursue either of three courses: (1) He may elect to treat the policy as still in force, and let the test of the validity of the cancellation or repudiation await until the policy is payable and is sued on; (2) he may sue in equity to set aside the cancellation, and to have the policy declared to be valid and in force; or (3) he may maintain an action at law to recover damages for the wrongful cancellation or repudiation."

The insured here elected to pursue the remedy last mentioned. For several months he tendered the premiums as they became due but when it became evident that the Brotherhood no longer recognized the policy as being in force, he demanded a return of the premiums paid. After the certificate had been wrongfully cancelled, plaintiff was not required to

accept an offer subsequently made to restore his insurance upon the payment of the accrued premiums.

It must be kept in mind that we are not dealing in this case with matters of discipline or internal policy. The question before us relates solely to property rights. We need not determine whether upon being expelled by the local lodge it was necessary for plaintiff to appeal to the tribunals within the order before invoking the aid of the civil courts to enforce his rights. On this question see *Hampton v. Supreme Lodge Knights of Pythias,* 161 S. C. 540, 159 S. E. 923. In the instant case the plaintiff did appeal and it was finally determined by the Board of Directors that he had been improperly expelled.

Having concluded there was a wrongful breach of the contract, we now turn to the question of damages.

Defendant first contends that the plaintiff is only entitled to recover nominal damages inasmuch as it offered to reinstate the policy upon payment of accrued premiums. There is no merit in this contention. Plaintiff had a right to take the defendant at its word, treat the contract as rescinded and sue for damages. The question of the proper measure of damages is a more difficult one. The premiums paid and interest amount to $2,087.97. The accumulated dividends on the policy amounted to $100.98. The Court instructed the jury that the plaintiff was entitled to recover these two items and also "the value of any rights that he had under the policy which he lost because of its wrongful cancellation." The jury returned a verdict for $2,900.00, or just $100.00 less than the face amount of the policy. Defendant vigorously challenges the right of the plaintiff to recover any amount in excess of the premiums paid with interest and the dividends. It is said that the charge permitted the recovery of special damages, of which there was no proof.

There seems to be an irreconcilable conflict in the decisions concerning the measure of damages for the wrongful cancellation or repudiation of a contract of insurance by the insurer. We have never undertaken to lay

down an inflexible rule applicable to every situation. On the contrary, we have emphasized "that the facts of each case are necessarily of potent influence in determining the measure of damages." *Rogers v. Jefferson Standard Life Insurance Co.,* 182 S. C. 51, 188 S. E. 432, 434; *Hardee v. Penn Mutual Life Insurance Co.,* 215 S. C. 1, 53 S. E. (2d) 861. The nature of the insurance involved, whether the insured is any longer an insurable risk, whether similar insurance in another reputable company is available, and various other factors must be considered. In *Rogers v. Jefferson Standard Life Insurance Co., supra,* it was held that the measure of recovery was the amount of premiums paid with interest. In other cases involving different factual circumstances a somewhat different rule has been applied. *Pack v. Metropolitan Life Insurance Co.,* 178 S. C. 272, 182 S. E. 747; *Latta v. Sovereign Camp, Woodmen of the World,* 179 S. C. 376, 184 S. E. 157, (second appeal) 182 S. C. 215, 189 S. E. 126; *Holder v. Sovereign Camp Woodmen of the World,* 180 S. C. 242, 185 S. E. 547; *Pickney v. American Workmen,* 196 S. C. 446, 14 S. E. (2d) 273. The dominant idea in formulating a rule of damages in any case should be the reimbursement of the insured for the actual loss sustained by him, and the measure of recovery which adheres most closely to that idea is the one that should be adopted.

There are no circumstances in the instant case warranting a recovery in excess of $2,188.95. This amount represents the total premiums paid with interest, and the dividends. (We need not determine whether the dividends constitute a proper element of damage since there is no exception specifically challenging the right of the plaintiff to recover same.) It is not shown that plaintiff is unacceptable as a risk by another insurer. He testified that he did not know where he could buy other insurance with comparable benefits but he did not say that he had made any effort to obtain other insurance. It is undisputed that plaintiff had an opportunity of reinstating this policy if he

had desired to do so. Counsel for plaintiff frankly conceded during the trial that there was no proof of special damages.

The face amount of the policy was payable to the insured, if living, on November 1, 1956. He was approximately fifty years old at the time of the wrongful cancellation and then had a life expectancy far beyond 1956. The premiums on this policy aggregated approximately $150.00 a year. When the breach occurred in 1946 the policy had ten years to run before the face amount of $300.00 would have been payable unless the insured had died in the meantime. Obviously, the damages awarded by the jury, amounting to $2,900.00, were excessive.

The other questions raised by the exceptions relate to the exclusion of certain testimony. Defendant was not prejudiced by the rulings of the Court because the excluded testimony could not possibly have had any effect on the conclusions herein reached. The only testimony that was material was undisputed.

The judgment of the Court below is affirmed upon the condition that the plaintiff shall, within ten days after the filing of the remittitur, remit on the record of said judgment the sum of $711.05. (The premiums with interest plus the dividends amounted to $2,188.95, which deducted from $2,-900.00, the amount of the verdict, leaves $711.05.) Upon the failure of the plaintiff to comply with this condition, a new trial is granted.

BAKER, C. J., and FISHRURNE, STUKES and TAYLOR, JJ., concur.