## ADA J. COCHRAN, Appellant, v. JAMES WILSON et al.

### Division Two, April 7, 1921.

1. **NEGLIGENCE: Board of Education: Liability.** On the ground of its legal character alone as a quasi-corporation, the Board of Education of the City of St. Louis is not answerable in damages for negligence in the matter of keeping school grounds in a reasonably safe condition for pedestrians.

2. ———: ———: ———: **Governmental Function.** In the exercise of the duty conferred upon it by statute of erecting and maintaining public schools for the education of children, a school district, and especially the Board of Education of the City of St. Louis, performs a public or governmental power, and not a special corporate or administrative duty, and is not liable in damages for the negligent acts of its officers or agents in maintaining or repairing school buildings or grounds.

3. ———: ———: ———: **Trust Funds.** School funds are collected from the public to be held in trust by boards of education for the specific purpose of education, and an attempt to otherwise apply them is without legislative sanction and finds no favor with the courts. Such funds are similar to the funds of a charitable hospital, which, being devoted to a specific purpose, cannot be diverted or absorbed by claims arising from the negligence of its trustees or employees.

4. ———: **City: Injury to Pedestrian.** Unless the ground upon which a pedestrian was walking at the time she fell down a series of steps was a public highway, she cannot recover damages from the city

5. ———: ———: ———: **Steps on School Ground.** The space between a school building and a theatre was paved with granitoid and used as a thoroughfare by pedestrians passing from the street in front of the buildings to the next parallel street. The space was school ground, and in it was a series of four or five granitoid steps leading down to an entrance to the theatre. The grounds were unlighted, and plaintiff, walking along the paved passageway at night, fell down the steps and was injured. *Held,* that the liability of the city is dependent upon whether the space can be classed as a public highway, and it could become a public highway only by condemnation, formal dedication or adverse user.

Cochran v. Wilson.

6. ——: Highway: School Grounds: Condemnation. The land on which the steps were located where plaintiff fell and was injured being the property of the Board of Education, it could not be condemned as a highway, having already been devoted to a public use.

7. ——: ——: ——: Adverse User. The statute providing that statutes of limitation shall not extend to lands given, granted, sequestered or appropriated to any public, pious or charitable use, nor to any lands belonging to the State, a strip of land belonging to the Board of Education and used as a necessary appurtenance to one of its school buildings cannot become a public highway by adverse user. Besides, even if by adverse user it could become a public highway, there was no showing of such continuous use for a term of years as caused it to ripen into a prescriptive right to use the passageway as a highway.

8. APPEAL: Errors Against Respondent. Only adverse rulings of the trial court can form the basis of a complaint by an appellant. Upon an appeal by plaintiff alone from a judgment in her favor, assignments by defendant of errors based upon alleged improper admission and exclusion of testimony and the giving and refusing of instructions are not matters for consideration.

9. VERDICT: Unreasonably Small: Inadequacy. An appellant has the right to have set aside a verdict for personal torts either excessively large or ridiculously small, where the result indicates passion, prejudice or misconduct on the part of the jury. In determining whether it is such, the presumption is in favor of the good conduct of the jury; and if upon the whole record the case predominates in favor of the defendant or the evidence is evenly balanced, the courts will refuse to interfere with a nominal verdict, although at first view it may appear illogical. Inadequacy of the award is not alone a sufficient basis for setting aside the verdict.

10. ——: ——: ——: Liability of Defendant. And where there is no evidence that the space between the school building and the theatre was in control of the theatre owner, and the trial court might for that reason have sustained a demurrer to the evidence, the verdict of $250 for a pedestrian, who was directed by said defendant's employee to enter the theatre from said passageway, will not be disturbed upon plaintiff's appeal alone.

Appeal from St. Louis City Circuit Court.—*Hon. Frank Landwehr*, Judge.

AFFIRMED.

*Earl M. Pirkey* for appellant.

(1)   There is a limitation imposed upon the rule that counties are not liable for the negligence of county courts.   That limitation is to the effect that said rule is applicable only when liability is sought to be based upon the neglect of some duty enjoined upon the county court without its consent.   But where the county court voluntarily enters upon the performance of some act or duty which it could not have been compelled by law to perform, the county thereupon becomes subject to the same liabilities for the negligence in the performance of such special duties as private corporations would be if the same duties were imposed upon them.   Hannon v. County of St. Louis, 62 Mo. 313; Clark v. Adair County, 79 Mo. 536.   The above limitation to the foregoing rule is more peculiarly applicable to cases where the negligence occurs with respect to the improvement or management of county property of which the county is the owner or proprietor. Hannon v. County of St. Louis, 62 Mo. 319; Clark v. Adair County, 79 Mo. 537.   In the case at bar, there are no allegations in the petition that would show that the negligence of defendant Board of Education was with reference to some matter or duty which the board could have been compelled to perform or that was not discretionary with it.   Furthermore, in the case at bar, the premises with reference to which the negligence occurred was property in which the Board of Education had a proprietary interest, the exact nature of which is not specified in the petition, the petition alleging that the defendants were in charge and control of and using the said premises. For what specific purpose the board had acquired this property is not stated in the petition, but must have been for some purpose for which it had legal authority to hold property under the statute, the board might have acquired the ground for some use connected with the schools or for the purpose of investing school funds in real estate.   R. S. 1909, sec. 11030.   Whatever property

the Board of Education acquires or holds is virtually the property of the school district, and in the management of such property the board is acting as the agent of the district. But more strictly speaking, the statute vests the legal ownership of the property in the Board of Education itself, so that the negligence of the Board is legally with respect to its own property. R. S. 1909, sec. 11030. However, the entire doctrine which exempts counties and school districts from liability for the negligence of county courts and school boards is erroneous, because in conflict with the fundamental principles of law, and for that reason the Supreme Court should overrule the former decisions sustaining that doctrine. We believe that the dissenting opinion in Swineford v. Franklin County, 73 Mo. 279, states the true view of the matter in holding "that the alleged distinction between the liability of municipal corporations and the non-liability of *quasi*-corporations under like circumstances, is based upon precedent rather than reason, and is not sound." Two of the judges dissented from the decision of the majority of the court. Swineford v. Franklin County, 73 Mo. 279. The reasons assigned in support of the non-liability of counties and school districts are found when analyzed to be radically unsound and at variance with the true principles of law. One of the reasons alleged is that counties and school districts, on account of being political subdivisions of the State government, should enjoy immunity from liability for torts. This reason is a remnant of the old doctrine that "the king can do no wrong," and in its applications to counties and school districts, is absurdly out of place as well as unjust in its operation. The City of St. Louis is also a political subdivision of the State, the same as a county. Gracey v. St. Louis, 213 Mo. 387. Yet the City of St. Louis is held liable for the negligence of its officials in numerous decisions of the appellate courts of this State. If it is proper to hold the City of St. Louis liable, it is also proper to hold counties and school districts liable for the torts of their officials. It is expressly provided by statute that the Board

of Education in cities of 500,000 inhabitants or over may "by and in said name sue and be sued." R. S. 1909, sec. 11030. What good reason, and what authority, can there be for whittling down the application of the above provision of the statute and holding that it applies only to suits on contract liabilities and not to suits on liabilities for torts. This provision is general in its terms and without qualification imparts to the Board of Education the capacity of being sued the same as any individual or corporation. The further reason assigned in some decisions why counties should be exempt from liability is that county courts deriving their functions directly from the state are independent of the counties, and the counties having no authority to direct or instruct the county courts in regard to the performance of their duties, the counties therefore should not be held liable for their negligence. A distinction is raised between counties and municipal corporations in this respect. The above distinction is not a real one. There is no real difference between a municipal corporation and a county in this regard. The Constitution of our State provides: "The courts of justice shall be open to every person and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." Mo. Constitution, Art. 2, Sec. 10. Depriving plaintiff of the right to sue the Board of Education for compensation for the injuries sustained by her from the negligence of said Board in the management of school property, is in direct violation of the above mandatory provision of the Constitution. Theiles v. Tillamook County, 75 Ore. 214, 146 Pac. 828. A person is entitled to sue a county for damages resulting from negligent defects in public roads. Otherwise there would be a right without a remedy. County Commissioners v. Duckett, 20 Md. 468. The Board of Education can be sued for damages growing out of its negligence in the maintenance or management of school property, Waheman v. Board of Education, 187 N. Y. 331, 116 Am. St. 609; M'Carton v. City of New York, 133 N. Y. Supp.

939, 149 App. Div. 516.	(2) The trial court committed error in sustaining the demurrer of defendant City of St. Louis to the evidence. The evidence shows that the premises in controversy were used by the general public as a thoroughfare or street for travel on foot by night and day and that it had been so used for nearly twenty years; that its said use was open and public; that it was recognized as a public thoroughfare by its policeman, who directed people to go through it. There was a sufficient case made against the defendant city to go to the jury. Hemphill v. City of Morehouse, 162 Mo. App. 574; Curran v. St. Joseph, 264 Mo. 659. (3) The verdict for $250 for the plaintiff against defendant Wilson is grossly inadequate, in view of the character and extent of the damages sustained by plaintiff, and accordingly the judgment should be reversed and plaintiff granted a new trial. Craton v. Huntzinger, 187 S. W. 51.

*Robert Burkham* for respondent.

(1) The Board of Education of the City of St. Louis is a *quasi*-corporation and so being is not liable for the negligence of its members, officers or employees. Reardon v. St. Louis County, 36 Mo. 555; Swineford v. Franklin County, 73 Mo. 279; Clark v. Adair County, 79 Mo. 536; Cunningham v. St. Louis, 96 Mo. 53; Reed v. Howell County, 125 Mo. 58; Lamar v. Road District, 201 S. W. (Mo.) 890; Moxley v. Pike County, 276 Mo. 449; McClure v. School Dist., 79 Mo. App. 80; Freel v. School City of Crawfordsville, 142 Ind. 27, 37 L. R. A. 301; Ford v. School Dist., 121 Pa. 543; Finch v. Board of Education 30 Ohio St. 37. (2) The matter of public education is a governmental function, in consequence of which the Board of Education of the City of St. Louis is not liable for negligence in the performance of such duty. Mo. Constitution, Art. 11, sec. 1; Murtaugh v. St. Louis, 44 Mo. 479; Ulrich v. St. Louis, 112 Mo. 138; Cassidy v. St. Joseph, 247 Mo. 197; Hill v. Boston, 122 Mass. 344; Wixon v. Newport, 13 R. I. 454; Folk v. Milwaukee, 108

Wis. 359. (3) It is contrary to public policy to allow charitable funds, and particularly public charitable funds, to be subjected to the demands of those injured by the negligence of those administering such funds. Nicholas v. Evangelical Deaconess Home; 219 S. W. (Mo.) 643; Adams v. University Hospital, 122 Mo. App. 675; Whittaker v. Hospital, 137 Mo. App. 116; Freel v. School City of Crawfordsville, 142 Ind. 27; Ford v. School Dist., 121 Pa. 543; Wiest v. School Dist., 68 Ore. 474, 49 L. R. A. (N. S.) 1025.; Weddle v. School Commrs., 94 Md. 334.

*Charles H. Daues, Arthur H. Buder* and *H. A. Hamilton* for City of St. Louis.

(1) A street can be established by dedication, condemnation or prescription. There is no evidence of a dedication or condemnation, and the evidence does not establish that the place where appellant was injured became a public thoroughfare by user. Stacey v. Miller, 14 Mo. 478; Brinck v. Collier, 56 Mo. 160; Landis v. Hamilton, 77 Mo. 554; Anthony v. Kennard Bldg. Co., 188 Mo. 704; Railway Co. v. Wollard, 60 Mo. App. 631; Coberly v. Butler, 63 Mo. App. 556; Strong v. Sperling, 200 Mo. App. 66. (2) The appellant was injured on property belonging to the Board of Education of the City of St. Louis. The respondent, the City of St. Louis, could not acquire title to this property for street purposes either by condemnation or prescription. City of St. Louis v. Moore, 269 Mo. 430; R. S. 1909, sec. 1886.

WALKER, J.—This is an action for personal injuries brought in the Circuit Court of the City of St. Louis by plaintiff against the Board of Education, the City of St. Louis and James Wilson. The Board of Education demurred to the petition. The demurrer was sustained and exceptions saved. Upon a trial before a jury a demurrer to plaintiff's testimony filed by the City of St. Louis was sustained, and the court's action in regard thereto was preserved by plaintiff for review

on appeal.    The result of the trial was a verdict for plaintiff in the sum of $250 against James Wilson.    The trial court thereupon entered judgment for plaintiff against him, dismissed the suit as to the City of St. Louis and entered judgment in favor of the Board of Education.    Plaintiff appealed to this court.

The alleged liability of the City of St. Louis and its joinder as one of the defendants is the basis of this court's appellate jurisdiction.

The defendant James Wilson owned a large theatre building in the City of St. Louis called the Odeon.    This building, No. 1042, is located on the east side of North Grand Avenue.    Immediately south, with a driveway or open space between, is located one of the high school buildings of the city, belonging to and under the supervision of the Board of Education.    The space between these two buildings was covered with granitoid, and near the high school building there were ten or twelve steps leading from the level of Grand Avenue to the grounds of the high school building.    The space between these two buildings, affording an opportunity for passage by pedestrians from Grand Avenue to School Street or *vice versa,* was used as a thoroughfare by persons in going from one of these streets to the other. The plaintiff having been directed, as she says, by the manager of the Odeon in her efforts to enter the building, was passing over the high school grounds, which were not lighted, when she fell down a flight of steps and received the injuries for which she claims damages. The plaintiff assigns error in the court's sustaining the demurrer of the Board of Education to her petition; in sustaining the demurrer of the City of St. Louis to plaintiff's evidence; and in entering judgment on a grossly inadequate verdict rendered in her favor against James Wilson.    These in their order.

I.    As to the first assignment, it is not a question as to the sufficiency of the formal allegations of the petition, but do those alleged state a cause of action

against the Board of Education? This board
**Liability of School District.** is a *quasi*-corporation and bears a like rela-
tion to the State or its educational system to
that sustained by a school district. [Art.
XIII, chap. 106, R. S. 1909; Art. XVI, chap. 102, R. S.
1919.] Even more definite in terms and comprehensive
in scope than the laws defining the corporate existence
of ordinary school districts is that in relation to such a
district as is authorized to be created in a city of 500,000
inhabitants or over, or that at bar. [Secs. 11030 et seq.,
R. S. 1909; Secs. 11456 et seq., R. S. 1919.] The reasons
prompting legislative action in the creation of school
districts has been judicially defined many times, nowhere
perhaps more fully or clearly than in Freel v. School of
Crawfordsville, 142 Ind. 27, in which recovery was
sought by a laborer in a suit against a school district
for injuries while working on a school building. A de-
murrer to the petition was sustained and there was
judgment for the defendant. This was affirmed on an
appeal to the Supreme Court. In discussing the *quasi*-
corporate capacity of the district as a ground of non-
liability, at page 28, the court said, in effect:

"They are involuntary corporations, organized, not
for the purpose of profit or gain, but solely for the pub-
lic benefit, and have only such limited powers as were
deemed necessary for that purpose. Such corporations
are but the agents of the State for the sole purpose of
administering the state system of public education. It
is the duty of the school trustees of a township, town,
or city, to take charge of the educational affairs of their
respective localities, and, among other things, to build
and keep in repair public school buildings. In perform-
ing the duties required of them, they exercise merely
a public function and agency for the public good, for
which they receive no private or corporate benefit.
School corporations, therefore, are covered by the same
law in respect to their liability to individuals for the
negligence of their officers or agents, as are counties and
townships. It is well established that where subdivis-

ions of the State are organized solely for a public purpose by a general law, no action lies against them for an injury received by a person on account of the negligence of the officers of such subdivision, unless a right of action is expressly given by statute.    Such subdivisions, then, as counties, townships and school corporations, are instrumentalities of government and exercise authority given by the State and are no more liable for the acts or omissions of their officers than the State.''

The question as to the liability of *quasi*-corporations for the negligence of their directors, officers or employees has, in regard to other than school districts, been frequently considered by this court.    In Reardon v. St. Louis County, 36 Mo. 555, an action was brought by a widow against the county for the death of her husband alleged to have been caused by the negligence of the county in failing to keep a bridge in repair.    A demurrer was sustained to the petition and upon appeal to this court the judgment was affirmed.

The basis for this ruling, briefly stated, is that counties are *quasi*-corporations created by law for purposes of public policy and are not answerable in damages for a failure to perform the duties enjoined on them unless the right of action is given by statute.

In Swineford v. Franklin County, 72 Mo. 279, the plaintiff brought suit against the county for damages caused by the county court ordering the filling up of a mill race which crossed a public highway.    By a divided court the plaintiff was held not entitled to recover, on the ground of the non-liability of the county as a *quasi*-public corporation in its control, through the county court, of the public highways.

In Clark v. Adair County, 79 Mo. 536, the county was held not liable in an action for damages caused by the falling of a bridge on a public road.    Following the rule in the Reardon and Swineford cases, supra, the court held that "counties are territorial subdivisions of the State, and are only *quasi*-corporations created by the Legislature for certain public purposes.    As

such they are not responsible for neglect of duties enjoined on them or their officers unless a right of action for such neglect is given by the statute. Such has always been the rule in this State.''

In Cunningham v. St. Louis, 96 Mo. 53, an action was held not maintainable against the city for an injury resulting from its negligence in permitting an unguarded pit to exist adjacent to the approach to the courthouse. In the maintenance of the courthouse the city was held to be occupying the same relation towards the State as that of a county in regard to its courthouse, and on the same ground of non-liability of a county under like circumstances the city was held not to be liable. The reason for this ruling was, as is evident, the *quasi*-corporate character of the city in its maintenance of the courthouse as a facility for the transaction of the State's business, viz., the collection of the revenue.

In Reed v. Howell County, 125 Mo. 58, citing with approval the foregoing cases, a county was held not liable for damages arising from a wrongful attachment of property. The reason for non-liability in this case is based upon the presumption that in the absence of any allegation in the petition to the contrary the officers of the county, in the institution of the suit on which the attachment was based, were engaged in the performance of those public duties which were enjoined on them by the authority of the statute and were not undertaken for their private benefit or the emolument of the county.

In Lamar v. Bolivar Road District, 201 S. W. 890, this court ruled that a special road district, being a *quasi*-corporation, is not liable for an injury occurring upon a highway. This ruling was but a reiteration of the doctrine which has been announced in this State since the Reardon case in 1865.

In Moxley v. Pike County, 276 Mo. 449, l. c. 453, this court ruled that a county was not liable for an injury caused by a defective highway. The reasons for the court's ruling are stated somewhat elaborately and may not inappropriately be quoted in this connection.

Cochran v. Wilson.

"When, for convenience in the administration of its laws, the State, through the Legislature, calls to its aid those territorial organizations sometimes called, with more or less accuracy, *quasi*-corporations, such as counties, townships and school districts, the question has frequently arisen whether these agencies share, with the State itself, immunity from common-law liability for the negligence of their officers in the exercise of their territorial duties. The answer, from the courts of this State, has generally been a negative one. From Reardon v. St. Louis County, 36 Mo. 555, down to Lamar v. Bolivar Special Road District, 201 S. W. 890, are many cases which will be found collected in the case last cited which have settled the general principle so firmly that it is not questioned by this appellant. On the other hand, it has been equally well settled that municipal corporations, which include cities, towns and villages, are, in the control, management and maintenance of their streets, alleys and public places, subject to such liability. The cases recognizing this doctrine are so numerous and so constantly before our appellate courts and their doctrine so well recognized as to render citations not only unnecessary but unjustifiable. This general doctrine is also recognized and admitted by the parties to this appeal."

The only variance from the uniformity of this ruling in regard to the non-liability of *quasi*-corporations is found in the case of Hannon v. County of St. Louis, 62 Mo. 313. This case, however, was impliedly over-ruled in Swineford v. Franklin County, supra, and was expressly disapproved in the late case of Moxley v. Pike County, supra. The current of authority, therefore, as we have stated it, is unbroken.

While the political subdivisions whose rights, powers and liabilities were discussed and determined in the cases cited were not school districts, the latter possess all the characteristics of *quasi*-corporations of the former, and may, with a reasonable regard for the rules of construction, be thus classified and held to be immune from liability in actions for damages for like reasons.

An exhaustive review of the authorities on this subject will be found in 37 L. R. A. 301, in a note appended to the Freel case, supra.

On the ground, therefore, of its legal character alone as a *quasi*-corporation the Board of Education is not answerable in this connection for the negligence charged.

Independent, however, of the foregoing, another reason exists for the non-liability of the Board of Education in a proceeding of this character. Public education is a governmental function. This is clearly recognized in our organic law, which declares that " a general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the General Assembly shall establish and maintain free public schools for the gratuitous instruction of all persons in this State between the ages of six and twenty years." [Art. XI. sec. 1, Const. Mo.]

Prompted by this provision, the General Assembly has legislated liberally concerning public schools and especially so in the statute creating the Board of Education of the City of St. Louis (Art. XIII, chap. 106, supra,) which is clothed with the supervision, control and management not only of the public schools but of the school property of said city, and to effect the purpose of its creation such powers have been conferred and duties enjoined upon it as the Legislature in its wisdom deemed necessary. In defining the corporate character of the Board of Education this court has said; " The School Board of St. Louis is an instrumentality created by the laws of the State to administer the trust created and assumed by the State for the education of the children of the State." [State ex rel. O'Connell v. Board, 112 Mo. l. c. 218.]

Speaking of school districts generally, we said in the later case of State ex rel. School District v. Gordon, 231 Mo. 547, l. c. 574: " But a school district is but the arm and instrumentality of the State for one single and noble purpose, namely, to educate the children of the district, a purpose dignified by solemn recognition in our Constitution."

These conclusions are sufficiently indicative of the nature of school districts to authorize their classification as instrumentalities engaged in the performance of governmental functions and hence subject to the same rules as to nonliability for negligence as other subdivisions of the State charged with the performance of like duties.

In Murtaugh v. St. Louis, 44 Mo. 479, the plaintiff sought to hold the city liable for injuries alleged to have been received by him through the negligence of employees while he was a patient at the city hospital. In holding the city not liable this court thus stated the rule: "The general result of these adjudications seems to be this: where the officer or servant of a municipal corporation is in the exercise of a power conferred upon the corporation for its private benefit, and injury ensues from the negligence or misfeasance of such officer or servant, the corporation is liable, as in the case of private corporations or parties; but when the acts or omissions complained of were done or omitted in the exercise of a corporate franchise conferred upon the corporation for the public good, and not for private corporate advantage, then the corporation is not liable for the consequences of such acts or omissions on the part of the officers and servants."

In Ulrich v. St. Louis, 112 Mo. 138, this court held that since the maintenance of the city workhouse was in pursuance of the governmental functions of the city of St. Louis it was not liable for injuries received by a prisoner therein, although caused by the negligence of the city's employees. In ruling upon this question the court said: "The rule of law is well settled in this State that a municipal corporation is not answerable in damages for the negligent acts of its officers in the execution of such powers as are conferred on the corporation or its officers for the public good. [Murtaugh v. City, 44 Mo. 479; Armstrong v. City, 79 Mo. 319; Kiley v. City, 87 Mo. 103; Carrington v. City, 89 Mo. 208; Keating v. City, 84 Mo. 415; 2 Dillon on Municipal Corporations (4 Ed.), sec. 965a.]"

In Cassidy v. St. Joseph, 247 Mo. 197, this court, applying the same doctrine, held that the city was not

liable for injuries caused by servants in hauling refuse.

If the operation of a city hospital, the maintenance of a workhouse or the collection of garbage are properly referable to the governmental functions of a city, no argument is required to establish the fact that the education of youth partakes of the same, although it may be of a higher character, and that the instrumentality, namely, a board of education, through which this function is exercised is consequently immune from actions for damages on account of negligence. Cases from courts of last resort elsewhere give added force to this conclusion. [Hill v. Boston, 122 Mass. 344; Wixon v. Newport, 13 R. I. 454; Folk v. Milwaukee, 108 Wis. 359.]

Finally, as conclusive of the rule stated in the cases cited, it is appropriate that the conclusions of the learned author of a leading treatise on Municipal Corporations be quoted in this connection:

"When a municipal corporation is charged by charter or statute with the duty of erecting and maintaining public schools for the education of the children of the municipality, the weight of authority is to the effect that in the exercise of the power so conferred it performs a public or governmental duty and not a special corporate or administrative duty, as distinguished from a state or public duty, and it is not impliedly liable for the wrongful acts and negligence of its officers or agents in maintaining and repairing school buildings." [4 Dillon on Munic. Corps. (5 Ed.) sec. 1658.]

Another equally cogent reason why the Board of Education cannot be required to respond to an action of the character of that at bar is the nature of the fund entrusted to its care and distribution. School funds are collected from the public to be held in trust by boards of education for a specific purpose. That purpose is education. An attempt, therefore, to otherwise apply or expend these funds is without legislative sanction and finds no favor with the courts. Cases in which hospitals have been held exempt from actions for damages for negligence on account of their character as charitable

institutions may not inappropriately be cited in this connection.

In Nicholas v. Evangelical Hospital, 281 Mo. 182, a patient sued the hospital for damages for burns inflicted from the negligence of a nurse. The court, in holding the hospital not liable, said: ''The law has been firmly established by the great weight of authority that the funds of a charitable hospital or association are trust funds devoted to the alleviation of human suffering, and cannot be diverted or absorbed by claims arising from the negligence of the trustees or their employees in administering the trust or charity.'' In thus ruling the court cited with approval two Courts of Appeals cases in which the exemption of hospitals from the rule of *respondent superior* was clearly set forth.

In Adams v. University Hospital, 122 Mo. App. 675, suit against the hospital had been brought by a patient burned with hot-water bottles while under the influence of an anesthetic. The court held that the hospital, being a charitable institution, was not liable for the negligence of either its managers or its employees. ELLISON, J., at page 686, thus states the reason for this ruling: ''But it is manifest that if we uphold a rule which would make an institution of charity liable to a patient who has been injured by an incompetent servant, negligently selected, we destroy the principle we have endeavored to make plain, that charitable trust funds cannot be diverted from the purposes of the donor. For it can make no difference, so far as the integrity of the fund is concerned, whether it be sought after by one who is injured by the negligence of a servant, or the negligent selection of such servant.''

In Whittaker v. Hospital, 137 Mo. App. 116, an employee brought suit against the hospital for injuries. In denying liability GOODE, J., at page 120 said: ''Two rules of law, both founded on motives of public policy, come into conflict here; the rule of *respondent superior* (or if not technically that, one akin to it) and the rule exempting charitable funds from executions for damages

287 Mo.—15

on account of the misconduct of trustees and servants. As both rules rest on the same foundation of public policy, the question is whether, on the facts in hand, the public interest will best be subserved by applying the doctrine of *respondeat superior* to the charity, or the doctrine of immunity; and we decided this cause for respondent because, in our opinion, it will be more useful on the whole not to allow charitable funds to be diverted to pay damages in such a case; and, moreover, the weight of authority is in favor of this view, as expressed not only in cases where the parties seeking damages were patients in the institution, but where they were not.''

There may be grounds, not necessary to be discussed here, for exceptions to this rule in its application to hospitals commercially conducted and which might seek shelter under the ample cover of charity in the broadest acceptation of that term. This, however, is aside in the determination of the matter at issue.

If it is against public policy as ruled in the foregoing cases to divert charitable funds, so-called, from other than the purpose for which they have been collected, how much stronger is the case where the funds are the fruit of taxation, belong to the people and are to be used for the beneficent purpose of free education. Their immunity from the payment of damages for negligence need not rely, however, upon the analogous rule applicable to the funds of charitable institutions but finds express approval in Freel v. School of Crawfordsville, supra; Ford v. School District, 121 Pa. 543; Wiest v. School District, 68 Ore. 474; Weddle v. School Commrs., 94 Md. 334, and numerous other cases of like character.

In the Weddle case at page 344, the doctrine in regard to the sacredness of public school funds is thus succinctly declared: ''There is no power given the board of School Commissioners to raise money for the purpose of paying damages, nor are they supplied with means to pay a judgment against them. All of their funds are appropriated by law to specific purposes and they

cannot be diverted by them. The Constitution of the State (Sec. 3, Art. 8) provides that the school fund of the State shall be kept inviolate and appropriated only to the purposes of education. In Perry v. House of Refuge, 63 Md. 27, this court distinctly held, in adopting the English decisions on the subject, that damages could not be recovered from a fund held in trust for charitable purposes."

While there are cases which have held school districts liable for torts, the great weight of authority is to the contrary. In view of the foregoing we hold that the Board of Education is not liable.

II.   The liability of the City of St. Louis under the facts is dependent wholly upon whether the space between the Odeon and the high school building can be classified as a public highway. It is elementary that land may become a public highway by either dedication, condemnation or prescription. It is not contended that the property was either condemned for or formally dedicated to a public use. It is undisputed that the Board of Education owned the land on which the steps were located where the plaintiff was injured. This being true, there could have been no condemnation of the property for a public highway, on the ground that it was already devoted to a public use; and, as we held in St. Louis v. Moore, 269 Mo. 430, being already so devoted, it could not for this reason be condemned as a highway. Condemnation eliminated, it could not have been acquired by the public through adverse user, in the presence of the statute (Sec. 1886, R. S. 1909, Sec. 1314, R. S. 1919), which provides that Statutes of Limitations shall not extend to any lands given, granted, sequestered or appropriated to any public, pious or charitable use nor to any lands belonging to the State. Owned by the Board of Education and used as a necessary appurtenant to one of its buildings, it became as completely subject to the above statute as if set apart for any other well defined public purpose.

*Liability of City.*

If this property could not be subjected to condemnation and was not affected by adverse user, as we are authorized in holding from the Moore case and the statute, supra, what gloss is needed or can be supplied to give strength to the conclusion as to the non-liability of the city? Waiving for the nonce, however, these reasons, which we deem ample, that appellant's contention may be viewed from every point of vantage, what are the facts as tending to show such user as would constitute the space a public highway? There was an entrance to the high school building on the north side of same, access to which was afforded by the space referred to. This was much used by children attending the school and by others as affording a readier and more convenient means of passing to and from Grand Avenue. As disclosed by the testimony, this use, so far as the public was concerned, was purely permissive on the part of the board and was not otherwise claimed by those who enjoyed it. No one testified that the passageway was used as matter of right and hence that it was regarded as a public highway, but simply because such use was not prohibited. Technically considered, such users, instead of being clothed with a right, might not inaptly be termed trespassers. If not so regarded, however, there is no such continuous use shown for a term of years as to cause same to ripen into a prescriptive right to use the passage as a highway. Absent this evidence, there is nothing to sustain the contention as to the city's liability.

III. In plaintiff's appeal from the judgment in her favor against James Wilson, assignments of error based on the alleged improper admission and exclusion of testimony and the giving and refusing of instructions are not matters for our consideration. Errors thus alleged to have been committed were cured by the jury's finding in plaintiff's favor. [Craton v. Huntzinger, 187 S. W. 48; Baker v. Mod. Woodmen, 140 Mo. App. 619; Knittell v. United Rys., 147 Mo. App. 677.]

**Errors Against Respondent.**

It is only the adverse rulings of the trial court that can form the basis of complaint by an appellant. [Shull v. Railroad, 221 Mo. l. c. 146; Harrison v. Lakenan, 189 Mo. 581; Brown v. Globe Pr. Co., 112 S. W. 462.]

Thus limited to a review of such errors as have been preserved by the appellant, it is futile for the respondent Wilon to urge here and now that there was no evidence on which to base the verdict; he acquiesced in its rendition, has not appealed, and in the presence of any substantial evidence to sustain the same we will not disturb it, even upon the contention of appellant. [Ross v. Presbyterian Church, 272 Mo. l. c. 107; Imp. Co. v. Harv. Mach. Co., 268 Mo. l. c. 369.]

IV. This leaves for consideration, therefore, the question as to the inadequacy of the verdict.

Well considered cases establish the right of an appellant to have a verdict set aside either excessively large or ridiculously small in actions for personal torts, where the result indicates passion, prejudice or misconduct on the part of the jury. The rulings of this court upon this question have been carefully collated by LAMM, J., in Fischer v. St. Louis, 189 Mo. l. c. 577, and their repetition here would serve no useful purpose. They abound in subtle distinctions or nice refinements and are so dependent upon their particular facts as not to be subject to any general rule governing the conclusions reached. In regard to them this much may be stated generally: that in arriving at a conclusion the presumption is in favor of the good conduct of the jury, and if upon the whole record the case preponderates in favor of the defendant or the testimony is evenly balanced, the courts will refuse to interfere with nominal verdicts although at first view they may appear illogical.

In Pritchard v. Hewitt, 91 Mo. l. c. 550, quoting with approval 1 Graham & Waterman on New Trials (2 Ed.) p. 451, this court says that the reason for holding so tenaciously to the damages found by a jury in cases of personal torts is that in this class of cases there

is no scale by which the damages may be graduated with certainty. They admit of no other test than the intelligence of the jury, governed by a sense of justice.

To the jury, therefore, is committed the exclusive task of examining the facts and circumstances to enable them to estimate the injury and award compensation therefor in damages. The law conferring this power and exacting the performance of this trust favors the presumption that the jury will be actuated by proper motives; and not until the result of their deliberation is manifested in such a form as to shock the understanding and indicate in no uncertain manner the presence of passion and prejudice will the courts interfere with their findings.

Than the amount of the verdict itself there is no indication here that the jury was influenced in their deliberations except by the facts. We have never held that the inadequacy of damages for personal injuries will of itself furnish the basis for such a presumption of passion and prejudice as will authorize a reversal of the judgment.

The reports are replete with declarations as to the superior opportunity afforded the trial judge over the appellate court by reason of the participation of the former in the moving panorama of the trial to correctly weigh the testimony and rightly determine the truth of the matter at issue. In recognition of this fact appellate courts defer largely to the actions of the trial courts, especially when the interference sought is based solely on the ground of an alleged excessive or inadequate verdict. Panoplied with this superior knowledge, which the letter of the record alone cannot afford, that sound discretion which it must be presumed the trial judge exercised in refusing to disturb the verdict, will not be accounted error. [Devine v. St. Louis, 257 Mo. 470; Morrell v. Lawrence, 203 Mo. 363; McCarty v. Transit Co., 192 Mo. 396; McCloskey v. Pulitzer Pub. Co., 163 Mo. 22; Minter v. Bradstreet, 174 Mo. 444.]

Furthermore, the appellant is not entitled as a matter of right to have this verdict set aside unless her case

is such that if the finding had been for the defendant she would have been entitled to have it set aside. Or, more concretely stated, if the jury has returned a verdict for nominal damages in a case where the plaintiff is entitled to no damages, the verdict will not be set aside by the appellate court at the instance of the plaintiff. [Haven v. Mo. Railroad, 155 Mo. 216; Dowd v. Air Brake Co., 132 Mo. 579.]

Waiving the lack of definite particularity in alleging that the plaintiff received her injuries on the premises in charge of and under the control of the defendant Wilson, there is no evidence of such control on his part. The permissive use by the public of such premises sometimes perhaps as a means of egress or ingress to the defendant's building, or the fact that his employee directed the course pursued by plaintiff at the time of her injury, does not constitute evidence of such control or use. The trial court, therefore, would have been justified in sustaining a demurrer to the evidence. In this state of the record we will not disturb the verdict at the behest of the plaintiff, and the defendant, not having appealed, has no ground of complaint. [Leahy v. Davis, 121 Mo. l. c. 236; Overholt v. Vieths, 93 Mo. l. c. 426.]

In view of all of which the judgment of the trial court is affirmed. It is so ordered. All concur.