Brian L. SNELLING and Jerome J. Lempe, Appellants,

v.

Paul S. CERNECH, Respondent.

No. WD 39705.

Missouri Court of Appeals, Western District.

May 17, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1988.

Application to Transfer Denied Sept. 13, 1988.

Philip J. Adams, Jr. of Watson, Ess, Marshall & Enggas, Kansas City, for appellants.

Philip B. Grubaugh of Deacy & Deacy, Kansas City, for respondent.

Before MANFORD, P.J., and TURNAGE and COVINGTON, JJ.

MANFORD, Presiding Judge.

Appellants (plaintiffs) appeal from the judgment of the trial court, entered upon a jury verdict, in favor of appellants on their claims for personal injuries against respondent (defendant). Appellants also appeal from the judgment of the trial court, entered upon the jury verdict, in favor of respondent against appellant Snelling on respondent's counterclaim for apportionment of fault for the injuries sustained by appellant Lempe.

Appellants raise five points on appeal which, in summary, charge that the trial court erred (1) in admitting evidence of appellant Lempe's prior drug use, because such evidence was not admissible for purposes of impeachment and was highly prejudicial; (2) in refusing to allow evidence of respondent's consumption of alcohol prior to the accident because such evidence was admissible to show respondent's impaired physical condition at the time of the accident; (3) in admitting evidence of appellant Lempe's alcohol consumption habits, because there was no evidence that appellant Lempe was physically impaired due to alcohol consumption at the time of the accident, and such evidence was highly prejudicial; (4) in failing to direct a verdict in favor of appellant Snelling on respondent's counterclaim and thereafter instructing on comparative fault because there was no evidence that appellant Snelling could have avoided the accident; and (5) in submitting instructions on comparative fault relating to appellant Lempe's claim against respondent because the instructions were improper modifications of M.A.I., and they were ambiguous and prejudicial.

The pertinent facts are as follows:

The collision occurred at the intersection of 47th Street and Norfleet in Independence, Missouri. Norfleet runs north-south and has a posted speed limit of 25 m.p.h. There is a stop sign on Norfleet controlling traffic crossing 47th Street. Forty-seventh Street runs east-west and has a posted

speed limit of 35 m.p.h. There are no traffic controls on 47th Street for traffic crossing Norfleet. There is a privacy fence on the northwest corner of the intersection which limits the view of south-bound vehicles on Norfleet to east-bound vehicles on 47th Street and vice versa.

The accident occurred in the early-morning hours of October 12, 1985. On the evening of October 11, 1985, Snelling went to Lempe's home to watch a baseball game on television. During the game, Lempe drank two beers and ate some Doritos. Snelling did not consume any alcohol that evening. Snelling fell asleep while watching the ball game and when he awoke, a little before 1:00 a.m., Snelling and Lempe decided to go to the International House of Pancakes, located at Noland Road and 40 Highway in Independence, to get something to eat.

Snelling drove his Datsun and Lempe was riding in the front passenger's seat. Snelling testified that it was raining hard, but that his windshield wipers were on and his vision was not obscured. Snelling testified that as they proceeded east-bound on 47th Street, he was not exceeding the speed limit of 35 m.p.h., and that he was paying attention to his driving.

Lempe testified that he never saw respondent's car before the collision and that when they reached the intersection, there was "like a flash streak and it was just an impact." Lempe was knocked unconscious in the collision.

Snelling testified that he never saw respondent's car before the collision. He described the accident as "an immediate flash of lights" as he was going through the intersection. Snelling stated that "there was no time for decision whatsoever", and that his immediate reaction was to put out his hand in an attempt to hold Lempe back. He testified that he never had an opportunity to apply his brakes. Snelling's automobile was totalled in the accident.

Respondent, Cernech, was the driver of the automobile which collided with appellants. Cernech testified that at the time of the collision, he was sixteen years old and had gotten his driver's license just four

months prior. He testified that on the evening of October 11, 1985, he went to a party at a friend's house and was planning on spending the night there because his friend's parents would not be home.

Cernech testified that he'd had a snack earlier in the day and at approximately 12:30 a.m. on October 12th, he and some friends went to get a pizza. Cernech was driving a car owned by his parents and as they were returning to the party, Cernech turned off of 40 Highway and proceeded south on Norfleet. Cernech stated that it was raining hard and his car windows were partially fogged.

As he entered Norfleet, he was traveling approximately 40 to 45 m.p.h. (Cernech admitted that after the collision, he told a police officer he was going 45 to 50 m.p.h. The posted speed limit on Norfleet is 25 m.p.h., which is posted at two locations on Norfleet between 40 Highway and 47th Street.) Cernech "coasted" down Norfleet toward the intersection at 47th Street. He testified that although he had been through the intersection once before (on the way to get pizza), he "vaguely" remembered a stop sign. Cernech stated that he did not see the stop sign until just before the intersection, however, he admitted that as he was approaching the intersection, he stated to his passengers, "I don't see a stop sign." Cernech saw headlights 50 to 60 feet to his right coming toward him on 47th Street. At that time, he determined it was too late to brake so he decided to attempt to accelerate through the intersection. Cernech's vehicle was in the middle of the intersection when it was struck by Snelling's vehicle. Cernech's vehicle sustained damage to the right-rear quarterpanel, just behind the door. Cernech was not injured and his passengers sustained minor injuries.

Appellants' attorney sought to cross-examine Cernech concerning his use and possession of alcohol on the evening before the accident, but the court would not allow it, having previously ruled on the matter by granting respondent's Motion in Limine. Appellants made the following offer of proof, which was denied by the court: That Cernech had admitted consuming one beer

at approximately 10:00 p.m. at an all-night party without parental supervision; that Cernech and a companion had obtained a case of beer from a field for use at the party; that Cernech had a history of consuming beer and wine at home with parental consent; that there was a case of wine coolers at the party; that Cernech had not eaten during the evening; and that a police officer at the accident scene smelled beer on Cernech's breath. (Police officials did not administer a sobriety test.)

At the time of the accident, Snelling was 21 years old. Prior to the accident, he was in good health and was employed by Belger Construction earning $15.32 per hour. Snelling's job involved the building of box culverts and he was often required to go inside the box culverts, necessitating movement while in a "catcher's squat."

Following the collision, Snelling exited his vehicle and approached Cernech. Snelling testified that Cernech admitted that he had not seen the stop sign. Snelling went to a nearby house to call the police. Snelling noted that his injuries included pain in his back, right shoulder, and right knee. Although an ambulance arrived, Snelling did not avail himself of medical attention until later that day.

At approximately 3:00 p.m. on October 12th, Snelling went to Park Lane Hospital, complaining of his injuries. Medical personnel X-rayed Snelling's back, right shoulder, and right knee. He did not receive any treatment that day for his shoulder or back, however, Snelling's right knee was drained of fluid. He received a knee brace and was advised not to return to work until he was released by an orthopedic physician.

On October 18th, Snelling went to see a Dr. Gurba complaining of pain and swelling in his right knee. Dr. Gurba examined Snelling's right knee and recommended arthroscopic surgery. Snelling declined the surgery, but returned to Dr. Gurba on October 25th when the doctor again recommended surgery. Snelling still declined.

On October 30, 1985, Snelling returned to work at Belger Construction. On June 4,

1986, he returned to Dr. Gurba and consented to arthroscopic surgery. Dr. Gurba performed arthroscopic surgery on June 12th, and Snelling remained off work for seven weeks. He eventually quit his job with Belger because he could no longer perform his duties due to pain in his knee.

Thereafter, Snelling was employed by a painting company earning $7.00 per hour, but this too required Snelling to perform some work while kneeling and after seven weeks, he quit. At the time of trial, Snelling was working selling vacuum cleaners and he was still having problems with his right knee. Snelling has had $2,888.28 in medical bills from his injuries resulting from the collision.

At the time of the accident, Lempe was 22 years old. Prior to the accident, he was in good health and was employed as a laborer for Belger Construction earning $10.50 per hour. Upon regaining consciousness, Lempe noted that his injuries included a lacerated tongue, pain in his jaw and right knee, and a headache. Although an ambulance arrived at the scene, Lempe did not avail himself of medical attention until later that day.

At approximately 5:00 p.m. on October 12th, Lempe went to Park Lane Hospital complaining of his injuries. Medical personnel X-rayed Lempe's jaw and right knee [1] and prescribed pain medication and bed rest. Lempe did not return to work on Monday, October 14th, because of pain, swelling, and "popping" in his left knee.

Lempe remained off work because of his left knee and on November 5, 1985, he was seen by Dr. Robert Lopez–Plata, who referred him to Dr. David Clymer. On November 6th, Lempe saw Dr. Clymer, who examined Lempe's left knee and recommended arthroscopic surgery. The surgery was performed on November 11, 1985, at St. Joseph's Hospital on an out-patient basis.

Lempe did not return to work in November and December because of pain he experienced in his left knee when he would squat or extend the left leg. Lempe last

---

1. Lempe did not have any complaints at this time concerning his left knee.

saw Dr. Clymer on December 20, 1985, and at that time he was diagnosed as having left knee bursitis.

Lempe was examined by a Dr. John Collins, Jr. on January 21, 1986, who advised him that he would have problems with his left knee for the rest of his life and that further surgery was not recommended.

On cross-examination, Lempe admitted that he had told Dr. Clymer that he "drank about a case of beer a week". When appellants' attorney objected as to relevancy, the court decided to allow the question on the promise of respondent's attorney that he would "tie it in with something later on." Subsequently, respondent's attorney asked Lempe if he had told Dr. Clymer that he had used cocaine. Again, appellant's attorney objected on the grounds of relevancy and the court overruled the objection on the grounds that it was admissible for purposes of impeachment. Lempe then responded, "I told him I'd used it before." At the close of evidence, appellants' attorney requested a withdrawal instruction as to Lempe's history of alcohol consumption and cocaine use, and the court refused the instruction.

The cause was submitted to the jury which was instructed on comparative fault. The jury returned a verdict in favor of appellants, assessing Snelling's damages at $12,400.00, and Lempe's damages at $2,500.00. The jury found in favor of Cernech on his counterclaim and assessed fault on Cernech at 75% and on Snelling at 25%. Subsequently, the court entered its Judgment Nunc Pro Tunc in accordance with the jury verdicts and entered judgment in favor of Snelling against Cernech for $9,300.00; Lempe against Cernech for $2,500.00; and Cernech against Snelling for $625.00.

Following the overruling of timely-filed post-trial motions, appellants filed this appeal. Due to the disposition of the appeal, appellants' points one through three are not addressed herein.

■ Appellants received verdicts in their favor on their claims against Cernech. This court does not hold that the trial court committed error in the manner raised by appellants in their points one through three. Rather, this court holds that any error which may have been committed in the submission of evidence and the submission of their cases was cured by verdicts in favor of appellants. *Kohler v. McNeary*, 498 S.W.2d 796, 797 (Mo.1973). *See also Cochran v. Wilson*, 287 Mo. 210, 229 S.W. 1050, 1056 (1921); and *Geitz v. Green*, 642 S.W.2d 400, 401 (Mo.App.1982).

In *McCormack v. McNamee*, 274 S.W.2d 272, 279 (Mo.1955), the supreme court stated the general rule as follows:

> [P]laintiff has not demonstrated any situation which obviates application of the usual rule that any error (as to plaintiff) in the admission of this testimony was cured by a substantial verdict for plaintiff. *Cochran v. Wilson*, 287 Mo. 210, 229 S.W. 1050, 1056[5].

Thus, *McCormack* implies that a verdict should be substantial in order to cure any trial error. In *Davidson v. Schneider*, 349 S.W.2d 908, 913 (Mo.1961), the supreme court defined "substantial" in terms of a verdict in a personal injury case as follows:

> The verdict of $531.50 is not a "nominal" award, "merely as a recognition of some breach of duty owed by defendant to plaintiff," it was " 'substantial' ... an effort at measured compensation." McCormick, Damages, Sec. 20, p. 85.

It cannot be said that the verdicts in the present case were nominal. The jury verdict demonstrates their effort to award appellants the appropriate measure of compensation. The verdicts were not so "shockingly inadequate as to indicate that it is the result of passion and prejudice or of a gross abuse of ... discretion." *See Kirst v. Clarkson Construction Co.*, 395 S.W.2d 487, 490–91 (Mo.App.1965).

Appellants' points one through three are ruled against them.

■ Appellants' point (4) charges that the trial court erred in failing to direct a verdict in favor of Snelling on Cernech's counterclaim.

At the close of respondent's case, Snelling moved for a directed verdict on Cer-

nech's counterclaim. The court overruled the motion and thereafter submitted Instructions Nos. 11 and 16, which provided:

## INSTRUCTION NO. 11

In your verdict you must assess a percentage of fault to plaintiff Brian L. Snelling if you believe:

First, plaintiff Brian L. Snelling knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have slackened his speed

but plaintiff Brian L. Snelling failed to do so, or

Second, plaintiff Brian L. Snelling failed to keep a careful lookout, and

Third, plaintiff Brian L. Snelling in any one or more of the respects submitted in Paragraphs First or Second was thereby negligent, and

Fourth, as a direct result of such negligence plaintiff Brian L. Snelling sustained damage.

\*    \*    \*    \*    \*    \*

## INSTRUCTION NO. 16

If you find in favor of plaintiff Jerome J. Lempe your verdict must be for defendant on his claim against Brian L. Snelling and you must assess a percentage of fault to Brian L. Snelling if you believe:

First, plaintiff Brian L. Snelling knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have slackened his speed

but plaintiff Brian L. Snelling failed to do so, or

Second, plaintiff Brian L. Snelling failed to keep a careful lookout, and

Third, plaintiff Brian L. Snelling in any one or more of the respects submitted in Paragraphs First or Second was thereby negligent, and

Fourth, as a direct result of such negligence plaintiff Jerry Lempe sustained damage.

Appellants argue that the legal requirements for submission of failure to keep a careful lookout and thereafter slackened one's speed, are: "substantial evidence that if Snelling had kept a careful lookout he could have seen Cernech's vehicle in time to have avoided the collision, given Snelling had the means and ability to take effective action for that purpose," citing *Burrage v. McGee*, 644 S.W.2d 374, 376 (Mo.App.1982), as authority.

This court holds that there was substantial evidence from which the jury could have found that Snelling failed to keep a careful lookout and thereafter slacken speed in that the evidence was undisputed that Snelling was traveling under 35 m.p.h.; that Snelling did react to the situation in that he put out his arm to hold Lempe back; that Snelling did not brake or slacken speed; and that Snelling's automobile hit Cernech's in the rear six feet of the vehicle. The jury also heard evidence of speeds, reaction time, distance traveled, and stopping distances. From this evidence, the jury could infer that Snelling had time to react to the situation and that he could have braked, causing his car to slow enough to where Cernech's car could have passed through the intersection without mishap; and that having failed to do so, Snelling was partly responsible for the accident. *See Finniger v. Johnson*, 692 S.W.2d 390, 393 (Mo.App.1985).

Appellants' point (4) is ruled against them.

Appellants' point (5) charges the trial court erred in submitting Instruction No. 16 and Verdict Form B in that they were improper modifications of M.A.I. Cernech tendered Instruction No. 16 and Verdict Form B. Verdict Form B provided as follows:[2]

### VERDICT B

Note: Complete the following paragraph by filling in the blanks as required by your verdict. If you assess a percentage of fault to any of those listed below, write in a percentage not greater than 100%, otherwise write in "zero" next to that name. If you assess a percentage of fault to any of those listed below, the total of such percentages must be 100%.

---

**2.** See text of Instruction No. 16 *supra.*

On the claim of plaintiff Jerome J. Lempe for personal injury, we, the undersigned jurors, assess percentages of fault as follows:

Defendant Paul S. Cernech ___% (zero to 100%)
Plaintiff Brian L. Snelling ___% (zero to 100%)
TOTAL ___% (zero or 100%)

Note: Complete the following paragraph if you assessed a percentage of fault to defendant Paul S. Cernech.

We, the undersigned jurors, find the total amount of plaintiff Jerome J. Lempe's damages disregarding any fault on the part of plaintiff Brian L. Snelling to be $_____.
Note: All jurors who agree to the above must sign below.

_____ _____
_____ _____
_____ _____
_____ _____
_____ _____

These were a result of Cernech's counterclaim against Snelling. Appellants argue that the instruction and verdict form were improperly submitted with the package of instructions to be used in Lempe's claim against Cernech.

Error in submitting jury instructions has traditionally been held to be grounds for reversal only if it can be demonstrated that the error could have contributed to the erroneous verdict. *Barnes v. Tool & Machinery Builders, Inc.*, 715 S.W. 2d 518, 522 (Mo. banc 1986). In the present case, Cernech's counterclaim alleged that Snelling's negligence contributed to his own injuries as well as those of Lempe, and Cernech was requesting contribution from Snelling for any damages suffered by Lempe in a proportion consistent with fault attributed to Snelling. Verdict Form B directed the jury to assess fault as between Snelling and Cernech and to determine an amount which would fairly compensate Lempe, disregarding any fault on the part of Snelling.

Appellants suggest that the proper way to instruct the jury would have been to apply a percentage of negligence, if any, attributed to Snelling in Verdict Form A to Cernech's claim for contribution. However, given the verdicts which were returned by the jury (both verdicts assessed fault as Snelling–25% and Cernech–75%)

the result suggested by appellants would be no different than the result herein.

Before instructional problems will justify overturning a verdict, it must be shown that the error was prejudicial, *Hudson v. Carr*, 668 S.W.2d 68, 71 (Mo. banc 1984), or that it "misdirected, misled or confused the jury." *Joseph v. Elam*, 709 S.W.2d 517, 524 (Mo.App.1986). The verdicts herein were consistent. There is no evidence that the jury was misdirected, misled or confused. Appellants have failed to show any prejudice.

Appellants' point (5) is overruled.

The judgment is affirmed.

All concur.