MARY CASSIDY v. CITY OF ST. JOSEPH, Appellant.

Division One, December 24, 1912.

1. **APPEAL: Jurisdiction: Affidavit.** The order of the circuit court granting an appeal does not confer jurisdiction upon an appellate court unless there is a sufficient affidavit to support the appeal.

2. ————: ————: ————: **Omission of Words: Clerical Error.** While the word "vexation" was deliberately inserted by the Legislature in the statute governing affidavits for appeal, which provides that no appeal shall be allowed unless the appellant shall file his affidavit stating that the appeal is not made for vexation or delay, yet it is *held* that the omission from the affidavit in this case of the words "vexation or" is a clerical error, and the respondent will not be heard to question the affidavit after delaying two and one-half years and allowing considerable labor to be performed and expense incurred in preparing for a hearing on the merits.

3. **CITIES: Negligence: Exercise of Discretionary Powers.** Plaintiff's husband was employed by the board of health of defendant city and engaged in cleaning the streets. A team hitched to a wagon into which deceased's co-laborers were shoveling refuse, was frightened and ran while the driver was

standing at the back of the wagon. The team struck and killed deceased. *Held*, that the plaintiff cannot recover for her husband's death, a municipal corporation not being liable in damages for negligence in the exercise of its discretionary powers of a public or legislative character.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

REVERSED.

*W. B. Norris, O. E. Shultz,* and *Phil A. Slattery* for appellant.

(1)  Respondents cannot avail themselves of a motion to dismiss the appeal because of a defective affidavit (a), for the reason that the case has been argued and briefed and submitted upon its merits. Bridge and Const. Co. v. Railroad, 72 Mo. 664.  (b) Because no complaint that the affidavit was defective was made to the trial court at the time the order granting the appeal was made. The complaint was made by respondents for the first time in the appellate court after the trial court had granted the appeal, thereby preventing appellant from filing an amended affidavit. State ex rel. v. Broaddus, 210 Mo. 16; DeBolt v. Railroad, 123 Mo. 501.  (2) Respondents contend that the affidavit of appeal is defective, because it recites that the appeal is not taken for delay, but because affiant believes said defendant is injured and aggrieved by the judgment of the court. They insist that the affidavit should have said that the appeal is not taken for vexation or delay. We submit to the court that the terms "vexation" or "delay" as used in the statute are convertible and that "delay" as used in the statute means vexatious delay. We further submit that since the affidavit recites that the appeal was not taken for delay, but because affiant is injured and aggrieved by the judgment of the court, that having thus stated specifically the reason for taking the

appeal it followed that the question of vexation was thereby excluded. Burdock v. Post, 12 Barb. (N. Y.) 168; Armstrong v. Ames & Frost Co., 17 Tex. Civ. App. 46; Railroad v. Salt Co., 63 S. W. 1025. (3) The courts hold that the affidavit of appeal need not literally follow the language of the statute, but that a substantial compliance with the statute is sufficient. The omission of the term "vexation" is a mere clerical error, and the affidavit is a substantial compliance with the statute. State ex rel. v. Broaddus, 210 Mo. 1; Yost v. Silvers, 138 Mo. App. 524. (4) Defendant's demurrer should have been sustained for the following reasons: (a) Under the petition and the evidence, plaintiff cannot recover. The city is not liable for the violation of an ordinance. Ryan v. Kansas City, 232 Mo. 471. (b) If deceased was injured by reason of the team being left unfastened, such failure was the act of a fellow-servant, for which the city cannot be liable. Hawk v. Lumber Co., 166 Mo. 121; Fogarty v. Transfer Co., 180 Mo. 490; Marshall v. Schricker, 63 Mo. 308; Berquist v. Minneapolis, 44 N. W. 530; O'Kee v. Brownell, 30 N. E. 479; McDermott v. Boston, 133 Mass. 349. (c) If the injury was caused by an act of negligence it was the negligence of Fry in failing to fasten his team, or in failing to properly guard them. Fry was not an employee of the city, but was employed by Henley. The city had no control of Fry in the handling and management of his team, and the city had no power to discharge him. Fink v. Furnace Co., 82 Mo. 276; DeForest v. Wright, 2 Mich. 368.

*James W. Boyd* and *J. B. O'Connor* for respondent.

(1) The affidavit for appeal does not pretend to state or allege that the appeal was not taken for vexation or delay. It simply says that the appeal is not

made or taken for delay, thereby tacitly admitting that his appeal was taken for vexation. All the decisions hold that it is necessary for a party to comply with the statute before he is entitled to an appeal. (2) The law and the evidence in the case made it the duty of the circuit court to overrule the defendant's demurrer. The first reason assigned by the appellant as to why its demurrer should have been sustained, is stated in the following languagge: "Under the petition and the evidence, plaintiff cannot recover. The city is not liable for the violation of the ordinance." It is the respondent's contention that the violation of this ordinance constitutes negligence on the part of the city, but respondent further contends that if the city was not bound to obey this ordinance, still the city was bound to use in the business in which it was engaged, when Cassidy was killed, proper and reasonable care and caution, and its failure to do so, of course, would be negligence. The suit is not based on the violation of the ordinance, but is based upon the carelessness and negligence of the appellant.

BROWN, C.—This is an appeal from the order of the trial court sustaining a motion for a new trial after verdict for the defendant, on the ground of improper language used by defendant's attorney in his argument to the jury.

The affidavit for appeal omits the words "vexation or" from the form prescribed by the statute. The respondent has moved to dismiss the appeal for the reason of this omission, and the motion has been reserved for decision with the case. The transcript was filed in this court April 17, 1908. The appellant filed its abstract of the record and brief on December 29, 1911. Respondent filed her motion to dismiss the appeal October 11, 1911, and her brief upon the merits on the fourteenth of the same month. The suit is for $10,000 on account of the killing of one James J. Cas-

sidy, the respondent's intestate, by a runaway team in the employment of the city, under circumstances stated in the petition as follows:

"That by the provision of said chapter 32 and said section thereof, it was at all times herein stated unlawful for any person to leave any animal standing in any street, avenue, alley, public place in the city of St. Joseph, without being fastened or so guarded as to prevent its running away. That on or about the 17th day of June, 1907, at and near Savannah avenue and Jefferson street, where they intersect in the said city, defendant had said Welch and a number of laborers and men and teams and wagons under his charge and control and supervision engaged in the work of cleaning the streets. That at said time, said Welch, as agent, foreman and representative of the defendant, was in charge of the said men, laborers, teams and wagons, then and there in the employ of, and working for the city aforesaid. That at said time, there were at least two wagons and teams in the use of said city and used at said time and place by said Welch and said men and laborers under his control. That the deceased, James J. Cassidy, was then and there in the employment of the city and working for it as a laborer in its said business of cleaning said streets and he was then and there with the other laborers, under the control of and subject to the orders and directions of the said Stephen Welch. That at said time, to-wit, June 17, 1907, the defendant at said place by and through its said superintendent and foreman, Stephen Welch, carelessly and negligently left one of the said teams standing in Savannah avenue, a public street in said city, unfastened and unguarded without being fastened or guarded or hitched in any manner whatsoever, in violation of the ordinance above mentioned, then and in consequence of the carelessness and negligence of the defendant in having and leaving said team attached to said wagon unfastened and without being fastened

and unguarded and without being guarded and un-hitched and hitched in no manner, whatever, and in consequence of the defendant's violation of said ordi-nance and its failure to comply with its requirements or any of them, the said team became frightened and ran away and with great force and violence ran against said deceased near the intersection of said streets, thereby inflicting upon him serious and fatal wounds and injuries, of which he died, within three days thereafter.''

The testimony showed that at the time of the accident the deceased was driving a team employed by the board of public works of the city of St. Joseph in cleaning the streets of that city. That at the time and place of the accident three such teams and a number of men, including Welch, who acted as a straw boss as well as a sweeper, were employed in sweeping the dirt from the surface of the street into little piles near the gutter from which it was taken up with shovels, loaded into the wagons and taken to the city dump. Each of these wagons was accompanied by two men, one of whom acted as driver as well as shoveler, and the other was a shoveler. The horses were gentle, and as they passed along the street they would be stopped by the driver, sometimes after passing one of these piles of dirt four or five feet. As the piles were about that distance apart there would be two or three of them in reach of the wagon at the same time. The horses seem to have been driven by oral direction of the driver, stopping and starting at his call. As they were engaged in this work, all the three teams being within the limits of a three hundred foot block, an automobile passed one of them which it frightened with its horn so that it started instantly to run. It is claimed that the driver of this team was at the time engaged in shoveling one of the piles into the rear of his wagon. The deceased, who was engaged in the same employ-ment, seemed to fear that his team would be struck

or frightened by the runaways, and started towards them, when they ran against him, knocking him down and injuring him so that he died within a few hours.

Should it be necessary, further details will be mentioned in the course of the opinion.

I.  It is now the settled doctrine of this court that the order of the circuit court granting an appeal, whatever may be its recitals, does not confer jurisdiction upon the appellate court in the absence of a sufficient affidavit to support such appeal.  It is evident that to fill this requirement the affidavit must state, in substance, all that the statute requires, or must show on its face such an attempt to comply in good faith with all the statutory requirements as will impose upon the respondent the burden of making known his objections in time to prevent unnecessary loss and expense should it be held insufficient.  This duty of making timely complaint exists in all such cases in which amendments are permissible; for a party should be permitted as against himself to waive the performance of that to which his adversary may be entitled as a matter of course.

The statute provides that no appeal shall be allowed "unless . . . the appellant or his agent shall, during the same term, file in the court his affidavit, stating that such appeal is not made for vexation or delay, but because the affiant believes that the appellant is aggrieved by the judgment or decision of the court."  [R. S. 1909, sec. 2040.]  The appellant contends that the omission of the word "vexation" does not take anything away from the meaning of the statutory form and is therefore a substantial compliance with it.  We do not agree with this position but think that the word was deliberately inserted, on account of its peculiar meaning not expressed by any other word or combination in the sentence. It is within the knowledge of every lawyer of experience

in his profession, that parties have sometimes come to the courts with litigation with respect to which they have not hesitated to say that they would take good care that judgments against them should not be profitable in the gaining. While it is to the credit of our jurisprudence that this is becoming more rare, it serves to illustrate the difference in meaning between "vexation" as applied to our appellate litigation, and that "delay" which puts off the day of payment of a just liability by the same means.

Similar reasoning would apply should we undertake to substitute any other words contained in the statutory affidavit for that omitted. It has a signification of its own which the Legislature had the right to take into consideration, and we have little sympathy for judicial construction which substitutes the judgment of the courts for the judgment of the Legislature.

Although we do not consider the omission from the affidavit a mere error of form and not of substance, it carries upon its face evidence that it is a mistake in writing the very thing the statute requires to be written. It belongs to a class so usual that our first impression upon inspecting it is that it is the accidental omission of something the scrivener intended to write, and it would require evidence to convince us that it was his deliberate, intentional act. Such errors are called "clerical errors," because the difficulty is supposed to lie in the writing, and not in the intention. They are defined by both Burrill and Black, in their respective law dictionaries as "a mistake in copying or writing" and this definition has been generally adopted by the courts. It is well illustrated by the New York Court of Appeals in People ex rel. v. Wilson, 119 N. Y. 515, 518, where it is said: "Upon the admitted fact that the relator's property was inserted in the list by mistake, the error must, we think, be regarded as clerical. The admission that the plain-

tiff's lot was put in by mistake, naturally excludes any idea that it was inserted in the exercise of any judgment or discretion, or in pursuance of any determination that the lot was included within the district of assessment. It does not import that the board acted upon any misconception of the law, or of their duty, but that by mere inattention, or rather without any intention, in some way in making up the list the relator's lot was inserted. This construction is certainly justified in the absence of all explanation on the part of the defendants." In Marsh v. Nichols, 128 U. S. 605, the omission of the Secretary of the Interior to sign letters patent was a clerical error. In Bell v. Hearne, 19 Howard, 252, 262, a land patent intended for John Bell was, by error, issued and delivered to James Bell. This also was held to be a clerical error. These are generally amendable, and the one now in question belongs to the class in which the courts will give effect to the intention unless timely objection is made. In this case the respondent waited more than two and a half years and until considerable labor had been performed and expense incurred in preparing for a hearing upon the merits, and will not now be heard to question the affidavit.

II. The appellant in his brief says that "this appeal is taken on the theory that the case ought not to have been submitted under any conditions to the jury, and therefore the granting of a new trial by the lower court was error, and the verdict of the jury was for the right party on the whole record." Having decided that we have obtained by the appeal the jurisdiction to do so, it remains to consider that question only.

Neither the State nor those quasi-corporations consisting of political subdivisions which, like counties and townships, are formed for the sole purpose of exercising purely governmental powers, are, in the ab-

sence of some express statute to that effect, liable in an action for damages either for the non-exercise of such powers, or for their improper exercise, by those charged with their execution.   This applies alike to the acts of all persons exercising these governmental functions, whether they be public officers whose duties are directly imposed by statute, or employees whose duties are imposed by officers and agents having general authority to do so.   The same rule applies to municipal corporations in the exercise of similar powers, which are called discretionary powers of a public or legislative character (4 Dillon, Mun. Cor. [5 Ed.], sec. 2026), because they primarily rest in the discretion of the legislative authority of the municipal government, although their execution, like the execution of the general powers of the State government, may be intrusted to such officers and other agencies as the legislative authority may lawfully designate. When the exercise of these powers ceases to be discretionary; when it no longer depends upon the will of the municipal legislature, but upon the paramount will of the charter-making body, then only does the neglect of the municipality subject it to an action for damages.   This general principle is illustrated in the establishment and improvement of streets, which is not a matter of municipal concern only, but concerns the welfare and safety of the entire people.   The municipality is intrusted with their establishment and improvement for the benefit of all who may travel upon them.   Their location is purely discretionary, and no private action will lie either for a failure to locate a street or for its mislocation.   But in the very nature of things the absolute duty rests upon the municipality to use reasonable care in its improvement and maintenance, so that the people of the whole State as well as the strangers within their gates may travel upon it in reasonable safety.   It assumes this duty by the acceptance of its charter and the general policy of the

law to which it owes its existence, and is liable in damages to any one injured by its neglect or abuse. It also assumes the duty, where the act of its creation so provides, to furnish police protection to the inhabitants, to take measures to protect their health, and to insure general cleanliness and decency. These matters are, however, in their very nature, discretionary. The municipality must necessarily pass judgment upon the best method of accomplishing these results and when it has done so, it is within its discretion to enforce such regulations as it has made or not as it pleases. The execution or non-execution of its ordinances lies in its own hand. The same result follows with respect to the agencies it shall choose, whether they be men or things. The patrol wagon and its driver, the city ambulance with its driver, the street sweepers with the vehicles and employees that gather the dirt, are all agencies of the government with respect to these matters as well as are the mayor and council who provide the rules that set them in motion. The rule *respondeat superior* does not apply as between them and the municipality, nor is the city under obligation to account to any private individual for the manner in which these discretionary duties are performed. Each actor in the drama of government is responsible only for his own conduct.

These principles are almost universally recognized by the courts, which, however, have not always applied them with that uniformity of construction necessary to the preservation of the symmetry and certainty desirable in the laws to which our conformity is enforced. This court has approved the principle as we have stated it in Ulrich v. St. Louis, 112 Mo. 138, which cannot be distinguished in principle from the case before us. A prisoner in the city workhouse was required to hitch to a vehicle a pair of mules which the city knew to be of a vicious and dangerous disposition, wholly unfit for use and unmanageable, so that it was dan-

gerous to approach or handle them. The plaintiff was violently kicked by one of them and seriously injured. This court, adopting in that respect the opinion of the St. Louis Court of Appeals in the same case, said: "The rule of law is well settled in this State that a municipal corporation is not answerable in damages for the negligent acts of its officers in the execution of such powers as are conferred on the corporation or its officers for the public good. [Murtaugh v. City, 44 Mo. 479; Hannon v. St. Louis Co., 62 Mo. 313; Armstrong v. City, 79 Mo. 319; Kiley v. City, 87 Mo. 103; Carrington v. City, 89 Mo. 208; Keating v. City, 84 Mo. 415; 2 Dillon on Municipal Corporations (4 Ed.), sec. 965a.]" It was held that the city was not liable. That case is interesting not only for its correct statement of the law controlling this, but also for the citation of authorities with which it is supported. The same rule was adopted and enforced in Love v. The City of Atlanta, 95 Ga. 129, which was for damages sustained on account of the running away of an animal attached to one of the garbage carts of the city; and in Johnson v. Somerville, 195 Mass. 370; Haley v. Boston, 191 Mass. 291; Hayes v. Oshkosh, 33 Wis. 314; Kuehn v. Milwaukee, 92 Wis. 263; Condict v. Jersey City, 46 N. J. L. 157. These cases, most of which bear a striking similarity to the one we are considering, open to us, by their citations, a field of learning on this subject which may be harvested with profit at our leisure.

In Young v. Railroad and Kansas City, 126 Mo. App. 1, the Kansas City Court of Appeals seems to have taken a different view of the same question, but placed its decision to some extent on the theory that in the city cleaning work there is a difference with respect to the liability of the city for negligence, between the operation of sweeping dirt into piles and shoveling of the same piles into a wagon to be taken to the city dump. On this

question the court said: "It was the duty of the city to clear the streets not only for proper appearances but so as to keep them free and safe for travel; and there can be no doubt but that if it had left piles of dirt unguarded, and someone passing, while exercising care, was injured in person or property by reason of the obstruction the city would be liable." We think this distinction is too narrow and technical to consti-tute a reliable rule of action, even if the assumption which it involves, that when one of the objects of the work is to keep the street in safe condition for travel the same municipal liability results from the negligence of the officers and servants of the city who do it as would result from leaving it undone, is correct. This, however, we do not feel called upon to decide. The case, in so far as it may conflict with this opinion, is disapproved.

The order of the circuit court granting a new trial is accordingly reversed.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.