Terry Lee SMITH, a minor, by his Mother and Next Friend, Peggy Smith, Appellant,

v.

CONSOLIDATED SCHOOL DISTRICT NO. 2, Joe Herndon, Superintendent of Consolidated School District No. 2, and H. Robert Cradock, Respondents.

No. 51349.

Supreme Court of Missouri, En Banc.

Nov. 14, 1966.

Donald F. Price, Clem W. Fairchild, Herbert M. Kohn, Kansas City, of counsel, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for appellant.

James H. Greene, Jr., Raytown, E. E. Thompson, Kansas City, of counsel, Popham, Thompson, Popham, Trusty & Conway, Kansas City, for respondents.

HOLMAN, Judge.

Plaintiff, a minor, sued the defendant school district, its superintendent, and a physical education instructor for alleged negligence, praying $35,000 in damages for his personal injuries. Each defendant filed a separate motion to dismiss for failure to state a claim on which relief could be granted. All three motions were sustained. Plaintiff filed his motion to amend the judgment or for a new trial, and therein stated, among other things, that the court erred in refusing to grant leave to amend. No request for leave to amend appears in the record and, though counsel argue here that an amendment should have been permitted, there is nothing before us on that point. The motion was overruled and plaintiff appealed in due course.

The appeal was originally heard in Division Two. An opinion was prepared which was not adopted and the case was thereafter transferred to Court en Banc. Additional briefs were filed and the cause was reargued and resubmitted. An opinion was thereafter prepared which was not adopted and the cause has recently been reassigned to the undersigned. Portions of the last-mentioned opinion are here adopted without the use of quotation marks.

The school involved was the South High School at Raytown. The injury was alleged to have been received in a wrestling class while plaintiff was practicing "holds and falls and other wrestling experiences." The petition alleged, in substance, omitting essentially formal matters: that the State Department of Education had not ordered, suggested or recommended wrestling as a part of the physical education curriculum, but that defendants made it a required part thereof for the school year 1963–1964; that therein it was the duty of the defendants to "promote rules, regulations, instructions, teaching and supervision" to protect the students; that on January 24, 1964, plaintiff was engaged in that activity, as required, and that he had no knowledge of wrestling but relied on the defendants, and was injured. It was further alleged that defendants, jointly and severally, were negligent: (1) in failing to properly instruct plaintiff and in failing to "designate rules and regulations" for wrestling activities; (2) in failing to ascertain if plaintiff and his wrestling partner understood the "instructions so given," the danger of injury, and the methods of protection; (3) that "defendants" were present and saw or could have seen that plaintiff was about to be injured and failed to warn him or stop the wrestling; (4) in failing to exercise "ordinary care under the circumstances," and in failing to "employ" proper instruction; (5) in failing to "employ proper supervision," and (6) in failing to perform their statutory duty "to select and employ a suitable and competent instructor." As to the school district alone, plaintiff alleged that it failed to "select and employ a suitable and competent Superintendent of Schools to control the wrestling and employment of competent teachers," that it failed to eliminate wrestling from its curriculum and that it thus failed to comply with "the laws of the State." It was further alleged that "as a direct and approximate result" of the claimed negligence plaintiff sustained an injury to his shoulder and to other specified parts of his body.

The points made by plaintiff's counsel, including those in their original and supplemental briefs, are: that the doctrine of sovereign immunity is archaic and it should be abolished; that defendants acted outside their legal and statutory powers; that an amendment of the petition should have been permitted; that the motions to dismiss should have been considered separately; that if any immunity be held to exist, the individual defendants do not share it; that the individual defendants are liable for their own acts, whether of misfeasance or nonfeasance; that it was the duty of the Superintendent to employ only "Totally Proficient" persons to instruct in an "unauthorized activity"; and, finally, that if the instructor Cradock was negligent then Herndon is also liable under the principles applicable to a master-servant relationship.

The case is briefed jointly for the defendants, but with differing issues. Counsel say, in essence, that the rule of sovereign immunity is fully effective, and that it protects the school district from all liability; that the individual defendants were performing governmental and discretionary functions and that they are not liable in actions for negligence; that the petition alleges, as to them, mere nonfeasance for which they would not be liable in any event; that they stood in the relation of loco parentis to the plaintiff, and for that reason are not liable for an unintentional tort.

 Before reaching the points of ultimate controversy, we shall clear up a few others. The record made on the sustaining of each motion was that the motion to dismiss was sustained. This was not followed by an order that the cause was dismissed as to the respective defendant, which is certainly a more acceptable practice if that is what is really intended. However, as stated, no request for leave to amend is shown, and the plaintiff filed his motion to "Amend Judgment" or for a new trial, obviously regarding the order as a final

judgment. That motion was overruled. Under the authorities the order now appealed from constituted a final, appealable judgment. Jones v. Williams, 357 Mo. 531, 209 S.W.2d 907; Missouri Military Academy v. McCollum, Mo.App., 344 S.W.2d 636; Heard v. Fry's Estate, Mo.App., 336 S.W.2d 729.

 Counsel for plaintiff insist that the inclusion of wrestling in the curriculum as a required course in physical education was outside of the defendants' lawful authority. They cite nothing which so shows. Both sides go outside the record in discussing supposed regulations and manuals of the State Department of Education. Section 163.250, RSMo 1959, cited by plaintiff, which was repealed, effective July 1, 1965, Laws 1963, p. 200, and replaced by § 161.102 Cum.Sup.1965, merely gives the Department authority to adopt rules and regulations for courses in physical education and to compile and promulgate a manual of physical education. The statute is permissive, not prohibitory, and we may not assume that the Department has prohibited courses in wrestling or that our schools would include such a course, if prohibited. Plaintiff merely pleads that the Department "does not order, suggest or recommend wrestling * * *." We find nothing to indicate that wrestling was being taught "outside the powers and authority granted by statute" and we shall not further consider any such allegations as lending legal support to the plaintiff's petition. If any regulation of the Department of Education actually prohibited wrestling, the regulation should have been pleaded specifically. The courts will not interfere with the exercise of a school district's discretion except in a case of clear abuse, fraud, or some similar conduct. 78 C.J.S. Schools and School Districts § 99.

 The theory that Cradock, the physical education instructor, was an employee of Herndon, the Superintendent, and that Herndon would be liable for his acts in a master-servant relationship, is wholly

fallacious. It is a matter of public knowledge, and we may say of judicial notice, that all teachers in the public schools are employees of the school district and are employed by it on contracts. See §§ 163.-080–163.100, RSMo 1959. The superintendent may presumably recommend, but he does not employ. He is neither the master nor the employer of any teacher. These conclusions also refute the allegations to the effect that Herndon failed to employ a suitable and competent instructor for wrestling.

Plaintiff's counsel ask us to review the doctrine of sovereign immunity and to abolish it by judicial decree. As their principal authority they cite and quote from an article in Vol. 30, NACCA Law Journal, l. c. 30, which in turn, cites three state cases, and two under the Federal Tort Claims Act. For more than a century the courts of Missouri have uniformly held generally that political subdivisions of the state are not subject to liability in suits for negligence. Reardon v. St. Louis County, 36 Mo. 555; Clark v. Adair County, 79 Mo. 536; State ex rel. Jordon v. Haynes, 72 Mo. 377; Cassidy v. City of St. Joseph, 247 Mo. 197, 152 S.W. 306; Lamar v. Bolivar Special Road District, Mo.Sup., 201 S.W. 890; Zoll v. St. Louis County, 343 Mo. 1031, 124 S.W.2d 1168; Todd v. Curators of University of Missouri, 347 Mo. 460, 147 S.W. 2d 1063; Cullor v. Jackson Township, Putnam County, Mo.Sup., 249 S.W.2d 393. School districts are political subdivisions of the state. Art. 10, § 15, Constitution of Missouri, V.A.M.S., § 70.210, RSMo 1959, V.A.M.S. As such, school districts have long been held immune from liability in tort for negligence. Cochran v. Wilson, 287 Mo. 210, 229 S.W. 1050; Krueger v. Board of Education of City of St. Louis (Banc), 310 Mo. 239, 274 S.W. 811, 40 A.L.R. 1086; Dick v. Board of Education of City of St. Louis, Mo.Sup., 238 S.W. 1073. Our holdings have been so uniform that nothing is to be gained by restating the reasons for and against the doctrine of sovereign immunity.

We are aware that the theory of governmental immunity has been severely criticized, largely by text writers and in law review articles. Borchard, Government Liability in Tort, 34 Yale L.J. 1, 129, 229; 2 Harper & James, The Law of Torts, § 29.3, p. 1610; Prosser on Torts, 3rd Ed., Ch. 27, p. 1001 et seq.; 22 University of Chicago L.R. 610. It seems clear, however, that the principle of governmental immunity still prevails in the majority of states. With particular reference to schools and school districts see 86 A.L.R.2d 499 et seq. Some of the erosions of the rule, almost inextricably mixed in the discussion of the more questionable immunities of municipal corporations, appear in Prosser, supra, at page 1012. We regard the rule in Missouri as one of fixed public policy, and any abandonment of it, either as to political subdivisions or the state itself, should come through the legislative process. Several states have taken such action. 86 A.L.R.2d l. c. 502, 503. The chaos which resulted in California upon the sudden judicial rejection of the whole theory of governmental immunity is fully discussed in 36 Southern Calif.L.R. p. 161. It was necessary for the legislature to immediately enact a moratorium to preserve the status quo until the whole subject could be intelligently considered at the next legislative session. Calif.Stats.1961, ch. 1404.

■ We are inclined to agree with the statements made by the Supreme Court of Colorado in Tesone v. School District No. RE–2, in the County of Boulder, 152 Colo. 596, 384 P.2d 82, l. c. 84, 85, when it said, in part: "We have held repeatedly that if liability is to arise against a governmental agency for the negligent acts of its servants engaged in a governmental function, this liability, heretofore unknown to the law of this state, must be a creation of the legislative branch of the government. I repeat again that it is not the function of the judiciary to create confusion and instability in well settled law, nor is it within the province of judges to refuse to apply firmly established principles of law

simply because those rules do not conform to the individual judge's philosophical notion as to what the law should be. * * * Courts are not arbiters of public policy. * * * When successive legislative sessions come and go without amending or doing away with the rule; when hundreds of county commissioners through their organization resist a change; when the work of countless members of the boards of school districts throughout the state would be directly affected by a change in the law which would operate retrospectively; when the heavy majority of such board members and many of their constituents are opposed to 'repudiation' of the rule on well grounded concepts of public policy; how can it be said with certainty that the rule is so manifestly 'unjust' or that it is such an 'anachronism' that the judiciary should usurp legislative powers and do away with it?" The motion of the defendant School District to dismiss was properly sustained.

■ We reach now the question of the liability of the defendant Herndon. We have already denied plaintiff's contentions that Herndon as master was liable for any negligence of Cradock, the instructor, and that he was negligent in failing to employ a competent instructor. As applicable to Herndon, the petition alleges generally: that the *defendants* failed to properly instruct plaintiff, failed to ascertain if he understood the instructions given and the dangers involved, failed to employ "proper supervision," failed to select and employ a competent instructor, failed to eliminate wrestling from the curriculum, and that defendants, though present at the time of the occurrence, failed to warn plaintiff or to stop the wrestling. No facts are alleged which would directly connect Herndon in any way with a duty to instruct anyone in the wrestling course, to check on the plaintiff's individual knowledge, or personally to supervise the activities. And, he was not required to eliminate wrestling from the curriculum, for it is not shown to have been an unauthorized activity.

The only remaining allegation is that the *defendants,* though present, failed to warn plaintiff of the dangers or to stop the wrestling. The facts thus alleged are insufficient to cast any such duty on Herndon, especially in view of the fact that a presumably competent and certificated instructor had been employed and was in charge. We hold that no cause of action was stated against Herndon, and no request for leave to amend being shown, the judgment of dismissal as to him was proper.

Finally, we will consider whether the court erred in sustaining the motion to dismiss filed by defendant Cradock, the physical education instructor. The allegations of the petition in regard to said defendant, summarized and consolidated, were that he (1) failed to properly instruct plaintiff in wrestling, (2) failed to "designate rules and regulations for such wrestling activities," and (3) being present, saw, or by the exercise of ordinary care, could have seen that plaintiff was about to be injured and failed and neglected to warn him or to stop the wrestling, and thus avoid the injury to plaintiff.

We have concluded that the petition failed to allege sufficient facts to state a claim for relief against Cradock. Our disposition of the case is such that we do not reach certain contentions briefed by said defendant, i. e., (1) that he was a "public officer clothed with discretionary powers and at all times engaged wholly in performing a governmental function and thus not liable for acts of mere negligence"; (2) that he is not liable to plaintiff for alleged negligent acts of omission constituting nonfeasance; and (3) that the relationship of loco parentis existed between him and plaintiff and he was accordingly not liable to plaintiff for an unintentional tort.

■ In considering the sufficiency of the petition we are mindful that "the averments are to be given a liberal construction and the petition accorded those

reasonable inferences fairly indulged from the facts stated." Royster v. Baker, Mo. Sup., 365 S.W.2d 496, 500. However, it should also be noted that "the averment of a legal conclusion is not a statement of an issuable fact and is to be treated as no statement at all." Goodson v. City of Ferguson, Mo.Sup., 339 S.W.2d 841, 845, 846. We are of the opinion that since plaintiff seeks to recover for injuries resulting from his participation in a sport involving physical combat in which each party is seeking to overpower the other, the very nature of the activity is such as to require that he allege, with considerable specificality those facts which would raise a duty of care on the part of Cradock to stop the wrestling or take other action to prevent an injury to plaintiff.

Wrestling is one of the oldest and most universal of sports. It was a highly developed sport at least 3,000 years B. C. See Vol. 23 Encyclopedia Britannica, p. 804, 4th Edition. "It is common knowledge, and experience has shown, that competitive contests, athletic events and gymnasium exercises, like most other activities of life, have certain dangers and hazards, and injuries are sustained therefrom on many occasions despite the use of necessary care, regulations and safety appliances. Wrestling is in this category. It is a form of sport or athletics in which many individuals of all ages voluntarily partake at one time or another, regardless of size, weight, supervision or equipment, and usually no liability attaches thereto." Reynolds v. State of New York, 207 Misc. 963, 141 N.Y.S.2d 615, 617. Modern competitive wrestling is governed by various rules with certain holds barred. Under intercollegiate rules, "[s]trangling, butting, holds for punishment alone and grips considered dangerous to life and limb, such as the full nelson, toe hold, etc., are forbidden. It is illegal to slam an opponent to the mat unless the slammer has one knee on the mat." 29 Encyclopedia Americana, 567. It has come to our attention that competitive High School wrestling in this state is supervised by the Missouri High School Activities Association, and that the intercollegiate rules with certain modifications relating to High Schools, are applicable. We do not, however, consider those rules as we cannot take judicial notice thereof. Dunbar v. Board of Zoning Adjustment, Mo.App., 387 S.W.2d 164.

■ The allegation that Cradock was negligent in failing to properly instruct plaintiff and in failing to designate rules for wrestling activities are conclusions. There is nothing contained in those allegations which tend to show wherein those alleged omissions caused plaintiff to sustain injury or in what manner the performance of those acts would have prevented injury. Those allegations do not aid plaintiff in stating a claim for relief.

The allegation that Cradock saw, or in the exercise of ordinary care could have seen, that plaintiff was *about* to be injured, and failed to take preventive action, is unusual and has given us some difficulty. In determining the meaning and effect of that allegation we think it is important to consider that plaintiff was not engaged in a wrestling *match*. He alleged that at that time he was complying with the requirement "to participate with other students in a wrestling class and to practice certain holds and falls and other wrestling experiences." We also consider it significant that plaintiff did not allege that his opponent was larger, stronger, or more skillful than he. It will be noted that there is no allegation as to the hold that was being used by plaintiff's opponent or that such hold was dangerous or barred by any rules that may have been applicable to High School wrestling. In the absence of an allegation to the contrary it may be assumed that Cradock was not instructing plaintiff and his opponent in the use of holds which were known to be dangerous or were barred by any applicable rules.

It would be very difficult to see that a wrestler is *about* to be injured since the sport is one where the participants may re-

lease a hold or a hold may be broken at any instant. The allegation under consideration is a conclusion. In order to place a duty on Cradock to take preventive action some fact should have been alleged which would have indicated that plaintiff was in danger of immediate specific injury. We also think that plaintiff should have alleged that after Cradock had knowledge that plaintiff was about to be injured there remained time in which he could have taken effective preventive action prior to the time plaintiff's injury was sustained. If, for example, plaintiff had alleged that his opponent had a strangle hold on him; that Cradock had actual or constructive knowledge thereof and knew that such was a dangerous hold and if continued for a period of time would cause serious injury to plaintiff; that after acquiring such knowledge Cradock had time in which to warn plaintiff or to stop the wrestling prior to plaintiff's injury and failed to do so— then we would say (with the qualification hereafter stated) that he had alleged a claim on which relief could have been granted.

We have indicated that if plaintiff had made certain specific factual allegations he would have stated a claim for relief. That, of course, was stated without a consideration of the three special defenses defendant Cradock has briefed and which we have heretofore set out. It should be made clear that if there is merit in any of those defenses plaintiff could not have stated a claim, in any event, under the general factual situation here involved.

For the reasons stated we rule that the allegation under consideration is not sufficient to state a claim for relief against Cradock. Furthermore, as we have indicated, the petition, when considered as a whole, fails to state such a claim and hence the court did not err in sustaining Cradock's motion to dismiss.

The judgment is affirmed as to all defendants.

All concur.