Richard KERSEY and Delores Jean Kersey, Plaintiffs-Appellants,

v.

Samuel HARBIN et al.,
Defendants-Respondents.

No. 9893.

Missouri Court of Appeals,
Springfield District.

Dec. 8, 1975.

Stephen N. Limbaugh, Limbaugh, Limbaugh & Russell, Cape Girardeau, for plaintiffs-appellants.

David E. Blanton, Blanton, Blanton, Rice & Sickal, Sikeston, for defendants-respondents.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

Plaintiffs brought this action for the wrongful death of their minor son, Daniel Keith, a 13-year-old junior high school student. Defendant Samuel Harbin is Superintendent of Public Schools of Sikeston, Missouri; defendant W. L. Clayton is Principal of the Sikeston, Missouri Junior High School; defendants Holmes and Edwards are teachers and physical education instructors; defendant Mary Mather is the school nurse.

Taking the inductive allegations of the petition as true, plaintiffs' son was thrown to the floor by a classmate while both were participating in a physical education class. Defendant Edwards, the regular instructor,

did not appear for class, and defendant Holmes took over Edwards' class as well as his own. The injury occurred during a period of time when decedent's class was left without supervision.

Daniel received a head injury when he was thrown to the floor. He was seen by defendant Mather and was allowed to return to and participate further in the physical education class. Daniel thereafter became ill but was directed to remain at school until his father could be contacted. Having been notified of his son's injury, plaintiff Richard Kersey came to the school and took Daniel to the office of a local physician. Several hours later Daniel died as a result of the injuries he sustained at school.

The defendants filed separate but identical motions to dismiss the action pursuant to Rule 55.27.[1] As far as the record indicates, no affidavits or counteraffidavits were filed, nor was any evidence heard upon the motions. Without assigning any grounds, the trial court sustained each motion. Plaintiffs have appealed.

Specifically, the plaintiffs charged defendants jointly with negligence in 14 enumerated particulars: "A. In causing an eighth grade physical education class composed of 20 to 25 students and normally taught by a physical education instructor, to be taught by another physical education instructor who at the same time had the responsibility of teaching his own class of eight [sic] graders, composed of 20 to 25 pupils when said instructor was unable adequately to supervise both classes; B. In providing a teacher ratio in a physical education class of eighth graders to be one teacher per 45 pupils when the proper ratio is one teacher to 23 pupils; C. In requiring one teacher to teach at the same time two physical education classes of eighth grade male students, when two teachers were normally used for the instruction of said two classes; D. In leaving a physical education class of eighth grade male students to the responsibility of another teacher who already had a similar class, when one teacher was not equipped or able properly to supervise and teach both classes; E. In failing properly to supervise 45 male eighth grade students in two physical education classes, in that one class was left unattended and unsupervised in the gymnasium; F. In failing to supervise adequately two classes by causing one class to be placed in a locker room and another class placed in the gymnasium, unsupervised; G. In failing to supervise properly two classes of eighth grade male students, by keeping said two classes together and under direct supervision at all times; H. In failing to supervise two classes composed of eighth grade male students by leaving some of said students unattended when it was known that some of said students had a history of causing disturbances previously and by fighting, agitating and arousing their fellow students; I. In failing to maintain discipline among the students attending the Sikeston, Missouri Junior High School; J. In failing to supervise the students attending the Sikeston, Missouri Junior High School; K. In failing to provide a teacher or teachers for the physical education classes of the Sikeston, Missouri Junior High School; L. In failing to provide adequate medical treatment to Daniel Keith Kersey who had suffered severe head injuries; M. In allowing and directing Daniel Keith Kersey to resume his activities in an eighth grade physical education class after he had received severe head injuries; N. In failing to transport Daniel Keith Kersey to a physician or to a hospital when it was known that he had suffered severe head injuries and in requiring him to wait at said school until his father could be located and made to come to the school to pick up his said son and transport him to a hospital for medical aid."

1. All references to statutes and rules are to RSMo 1969, V.A.M.S., and V.A.M.R., except where otherwise specifically noted.

The allegations of each motion to dismiss were as follows: 1) "the petition fails to state a cause of action upon which the request of the prayer could be sustained"; 2) "as to this said defendant, the petition states conclusions and fails to state or allege facts"; 3) "at all times referred to in the plaintiffs' petition, this defendant was in the performance of a governmental function and as such, was clothed with discretionary powers and would not be liable for any damages that the plaintiffs may have sustained"; 4) "as this said defendant was performing governmental functions, he would not be liable to the plaintiffs for any alleged acts of [sic] omissions constituting nonfeasance"; 5) "the relationship of loco parentis existed between him and the late Daniel Keith Kersey and he is, accordingly, not liable to the plaintiffs for an unintentional tort, as none was committed."

On this appeal, the plaintiffs do not challenge the immunity of the school district, *Rennie v. Belleview School District,* 521 S.W.2d 423 (Mo. banc 1975); *O'Dell v. School District of Independence,* 521 S.W.2d 403 (Mo. banc 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975), although on oral argument they professed to believe the doctrine of sovereign immunity will shortly be abolished in this jurisdiction. We decline to speculate. Otherwise, both plaintiffs and defendants have briefed and argued a number of abstract propositions, citing many cases from this and other jurisdictions which, they maintain, support their respective positions. We shall limit ourselves to a consideration of those issues necessary to a proper disposition of the appeal. See *Beets v. Tyler,* 365 Mo. 895, 903–904, 290 S.W.2d 76, 82[16] (1956).

In our opinion, the direct and meritorious question presented is whether or not the plaintiffs' petition states a claim upon which relief can be granted. The first two paragraphs of the several motions to dismiss directly ·challenge the sufficiency of the plaintiffs' petition, and we address ourselves to that issue, forgoing for the moment any examination of the special defenses pleaded in paragraphs three, four and five of motions to dismiss.

 A motion to dismiss for failure to state a claim upon which relief can be granted performs the same function as a general demurrer, *Baysinger v. Hanser,* 355 Mo. 1042, 1044, 199 S.W.2d 644, 645–646[1] (1947); *Abbott v. Seamon,* 229 S.W.2d 695, 698[1] (Mo.App.1950), and ordinarily a petition should be held good as against such a motion if the averments of the petition, accorded every reasonable and fair intendment, state a claim which can call for the invocation of principles of substantive law which may entitle the plaintiff to relief. *Boyer v. Guidicy Marble, Terrazzo & Tile Co.,* 246 S.W.2d 742, 744[1] (Mo.1952); *Ingalls v. Neufeld,* 487 S.W.2d 52, 54[4] (Mo. App.1972). Generally, the pleader may not be cast merely because his cause of action is imperfectly or defectively stated, *Downey v. United Weatherproofing, Inc.,* 363 Mo. 852, 855, 253 S.W.2d 976, 977–978[1, 2] (1953), and on several occasions our Supreme Court has held that a petition which specifies the act complained of with sufficient certainty to advise the defendant of the charge he is to meet and then avers that the act was negligently done by the defendant is a good pleading and is not fatally defective as stating a mere conclusion. *Maybach v. Falstaff Brewing Corp.,* 359 Mo. 446, 455, 222 S.W.2d 87, 92 (1949); *Zichler v. St. Louis Public Service Co.,* 332 Mo. 902, 912, 59 S.W.2d 654, 657[6] (1933). It may therefore be said that our courts tend to construe pleadings most liberally as against the contention that no cause of action is stated or the argument that the averments constitute mere conclusions of the pleader.

 One significant exception to the rule that pleadings must be liberally construed arises in connection with those actions sometimes described as "disfavored" causes of action. 5 C. Wright and A. Miller, Federal Practice and Procedure § 1357 at 610–611 (1969). In such cases, courts are inclined to construe the complaint by strict-

er standards. Cases based on fraud or mistake are familiar examples, Rule 55.15, but in the federal courts, at least, a more strict standard of construction has been applied in cases where the defendants are or may be immune or privileged. See, e. g., *Owen v. Kronheim,* 113 U.S.App.D.C. 81, 304 F.2d 957 (1962); *Ginsburg v. Black,* 192 F.2d 823, 825–826[10] (7th Cir. 1951), *cert. denied,* 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342 (1952). In this connection, we have read and reread *Smith v. Consolidated School Dist. No. 2,* 408 S.W.2d 50 (Mo. banc 1966). In that case, an action for personal injury was brought by a minor against a school district, its superintendent and a physical education instructor, based on the negligence of all three. Defendants' motions to dismiss were sustained. After argument and reargument, the Supreme Court affirmed the trial court's order sustaining the motions. Although the court nowhere mentions "disfavored actions" our examination of the opinion convinces us that in this case plaintiffs' petition must be strictly construed. We proceed on that premise.

■■■ With deference, the petition is very loosely drawn by any standard. Plaintiffs charge the defendants, collectively, with all fourteen assignments of negligence, although it seems fairly obvious that the defendants cannot have owed the same duty to Daniel. Summarized, the first four allegations of negligence amount to no more than a conclusional averment that defendant Holmes' class was too large to manage. Conceivably there may be a rule regulating the size of a physical education class in junior high schools; § 161.102 gives the State Board of Education the authority to promulgate rules to be followed "to secure courses in physical education to all pupils and students in all public schools and in all educational institutions", but that statute is merely directory, *Smith v. Consolidated School Dist. No. 2,* supra, 408 S.W.2d at 53, and in any case we may not take judicial notice of the rules of administrative agencies. *Allen v. State Department of Public Health & Welfare,* 479 S.W.2d 183, 187[4]

(Mo.App.1972); *Nabors v. United Realty Co.,* 298 S.W.2d 474, 480[6] (Mo.App.1957). Moreover, assuming that assigning a large class to one instructor constituted a breach of duty owed to Daniel, and further that the size of the class in itself might in some manner have been a direct and proximate cause of his injury, plaintiffs' pleading contains no allegation charging any particular defendant with a duty or the right to fix the size of a class, nor any allegation of any right or duty on the part of an instructor to take any particular action if assigned more students than he could reasonably supervise. We do notice that § 168.201 authorizes district boards of education to employ a superintendent and "other servants and agents", but the district, not the statute, prescribes the duties of such employees, and, assuming that the instructors here involved are tenured teachers, § 168.108 does not purport to prescribe the duties which may be assigned to teachers by contract. The first four assignments of negligence are, in this factual situation, mere conclusions of the pleader.

Assignments E, F, G, I, J and K, again condensed, charge failure to supervise the class which Daniel was attending, failure to maintain discipline, and failure "to provide a teacher or teachers for the physical education classes of the Sikeston Missouri Junior High School." Supplementing these allegations by consideration of the whole petition, we see that they amount to charging the defendants collectively with negligence because one instructor was absent. No facts are alleged indicating the instructor was absent without cause, nor indicating that the superintendent or principal knew of his absence. There is no averment of any failure to perform a specific duty on the part of any defendant, nor any allegation that any failure of any defendant in particular to perform his or her duty caused Daniel's injury, nor is it alleged how the performance of those duties, whatever they may have been, would have prevented Daniel's injuries. These allegations do not aid plaintiffs in stating a claim for relief.

A further allegation of negligence—assignment H—is that defendants were negligent "[i]n failing to supervise two classes composed of eighth grade male students by leaving *some* of said students unattended when it was known that *some* of said students had a history of causing disturbances previously and by fighting, agitating and arousing their fellow students". (Emphasis added) This allegation is more specific than the other assignments of negligence, but we consider it insufficient. There is no allegation that Daniel's assailant, if we may call him that, was one of the students who "had a history of causing disturbances"; no allegation that the conduct of the unruly group was such as was likely to cause actual harm to other students; no allegation that the "history of causing disturbances" was or should have been known to any particular defendant, and no allegation that the conduct of Daniel's fellow students could have been controlled by the exercise of reasonable care on the part of any of the defendants so as to avoid injury to the decedent. Again, these allegations do not aid the plaintiffs in stating a claim for relief.

The remaining three allegations, again summarized, amount to an assertion that after Daniel was injured, the defendants collectively failed to diagnose and appreciate the seriousness of his injury and provide appropriate medical treatment. No facts are set out indicating that Daniel's appearance, after he was injured, was such that any of the defendants should have appreciated the severity of the injuries; there is no averment that any of the defendants had the skill to provide "adequate" medical treatment, or that whatever therapeutic measures could have been taken, however radical, would have avoided Daniel's death, which occurred shortly. For the reasons stated, we conclude that the petition, measured by the strict standards indicated in *Smith*, does not state a claim, and the court did not err in dismissing it pursuant to Rule 55.27(a)(6).

Remaining for consideration are the three special defenses pleaded by all the defendants severally. They are: 1. that the defendant was engaged in the performance of a governmental function, and as such, was clothed with discretionary powers and would not be liable for any damages plaintiff may have sustained; 2. that defendant was performing governmental functions and therefore would not be liable for any act or omission constituting nonfeasance; 3. that the defendants stood in loco parentis to the decedent and were not liable to plaintiffs for an unintentional tort, as none was committed.

■■■ Like the allegations of the petition, these special defenses are very abstractly stated. The first two are essentially claims of immunity based on the assertion that the particular defendant was performing a governmental function, but because we do not know what the specific duties and responsibilities of the individual defendants were, we cannot satisfactorily resolve the question of their possible immunity from the face of the petition. For example, one ground of liability relied on by the plaintiffs is that the teacher-pupil ratio was too high, but no pleaded fact or circumstance assigns responsibility for that condition. In addition, plaintiffs plead that defendant Edwards "did not appear", but there is no allegation why he was absent or for how long; defendant Mather is a school nurse, and her duties and responsibilities, whatever they were, could scarcely have been identical to those of the other defendants. We can say with reasonable confidence that we know of no general principle of law which clothes grammar school teachers with immunity from liability for their negligent acts. *Downs v. Conway School Dist.,* 328 F.Supp. 338, 348–349[5][6] (E.D. Ark.1971); *Duncan v. Koustenis,* 260 Md. 98, 271 A.2d 547, 550–552[1][2] (1970); *Eastman v. Williams,* 124 Vt. 445, 207 A.2d 146, 148–149[4–7] (1965); *Crabbe v. County School Bd. of Northumberland Co.,* 209 Va. 356, 164 S.E.2d 639, 641[3] (1968); Annot., 32 A.L.R.2d 1163, 1186–1189 (1953); Proehl,

Tort Liability of Teachers, 12 Vand.L.Rev. 723, 739–742 (1959) [hereinafter cited as *Proehl*]. It is nevertheless our tentative opinion that the scope of an individual instructor's duty to avoid injury to any particular student by controlling the conduct of the others is very narrow, particularly in view of the constitutional restrictions now laid upon teachers in disciplining their students. *Baker v. Owen,* 395 F.Supp. 294, 302–303[8–10] (M.D.N.C.1975), *aff'd,* —— U.S. ——, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). However the defendants' first two collective special defenses might be properly characterized, whether as "affirmative" defenses or special traverses, we believe the merits of those defenses can only be properly resolved upon reception of some species of proof. Cf. *Burke v. City of St. Louis,* 349 S.W.2d 930, 932 (Mo.1961).

Defendants' assertion that they stood in loco parentis to the decedent and are therefore immune from suit has only superficial ingenuity to commend it. The notion that a teacher stands in place of a parent is a legal fiction intended to describe and limit the teacher's privilege to discipline the child. If the loco parentis doctrine still stands in the wake of *Baker v. Owen,* supra, it has never been thought to excuse the teacher for his negligence. See *Chilton v. Cook County School Dist. No. 207, Maine Tp.,* 26 Ill.App.3d 459, 325 N.E.2d 666, 669–671 (1975); *Gaincott v. Davis,* 281 Mich. 515, 275 N.W. 229, 231[4, 5] (1937); *Proehl,* op. cit. at 726–729.

We fully realize we have accomplished little by this opinion other than to dispose of the appeal, but to reiterate, the parties have tendered us abstractions, rather than concrete propositions to be decided on specific facts, and we will state once more than an appellate court "is neither a law school nor a debating society, and [its] opinion is no place for a legal monograph or the airing of personal views on general matters."[2] Consequently, we have stated only tentative conclusions as to the applicable law. We believe the motion to dismiss was properly sustained, but because we believe plaintiffs *may* be able to amend their petition within permissible limits to state a claim, we think they should be permitted to do so, if they are so advised. It is so ordered.

All concur.

2. Parker, *Improving Appellate Procedure,* 25 N.Y.U.L.Rev. 1, 12–13 (1950), in R. Leflar, Appellate Judicial Opinions 202 (1974).